**GGV, Appellant (Respondent),**

**v.**

**JLR, individually and on behalf of RR, a minor child, Appellee (Petitioner).**

**No. C–01–1.**

Supreme Court of Wyoming.

Feb. 7, 2002.

---

JoAnn Fulton of Fulton Law Office, P.C., Laramie, WY, Representing Appellant.

Mary Elizabeth Galvan of Mary Elizabeth Galvan, P.C., Laramie, WY, Representing Appellee.

Mary Chinnock Petroski of Mary Chinnock Petroski, P.C., Laramie, WY, Guardian Ad Litem.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

HILL, Justice.

[¶ 1] Appellant, GGV (hereafter Mother), solicits review of the district court's order, issued in the context of a paternity action, which concluded that a material change of circumstances warranted modification of a prior custody order. The result of that order was that RR (hereafter Child) continued to be in the primary custody of Appellee, JLR (hereafter Father). Mother and Father lived together for several years but were never married to one another. Mother contends: that the district court erroneously admitted evidence which established her responsibility for life-threatening injuries that were inflicted on Child when he was just over three years of age;[1] that the district court failed to follow proper procedures in modifying the parties' child support obligations; that the district court further failed to take into account Mother's ability to pay for a portion of the cost of treatment and therapy for Child, as well as for extensive guardian ad litem and evaluation fees incurred in this custody dispute; and that the fees charged by the guardian ad litem and by evaluators were unreasonable. Father contends that there was no reasonable cause for Mother's appeal and seeks monetary sanctions under W.R.A.P. 10.05.

[¶ 2] We will affirm and impose sanction against Mother for this appeal.

## ISSUES

[¶ 3] Mother states these issues:

1. Did the trial court err in allowing Rule 609 evidence to be presented in this modification of paternity action?

2. Did the trial court err in failing to follow proper procedure in modifying the child support retroactively and when it failed to abate Appellee's child support and offset the abatement by amounts owed by Appellant?

3. Did the trial court err in failing to acknowledge Appellant's ability to pay for ongoing and extensive treatment and counseling for R.R.?

4. Did the trial court err in ordering Appellant to pay exorbitant Guardian ad litem fees and professional custody evaluation fees for which she had no ability to pay?

Father contends these are the issues we must decide:

A. Did the district court err in admitting evidence of child abuse of the minor child by the Appellant as evidence of a material change of circumstances for purposes of modification proceedings?

---

1. Child was born on December 26, 1989. At the conclusion of the instant proceedings, Child was 11 years old and is now over 12 years old.

B. Did the district court err in enforcing the child support provisions of an existing juvenile court order?

C. Did the district court err in ordering Appellant to contribute to the expenses of court ordered counseling for the minor child in the absence of evidence supporting a finding that Appellant is unable to contribute to those expenses and the absence of any objection thereto by Appellant?

D. Did the district court err in ordering the Appellant to contribute to the fees of the Guardian Ad Litem and for the fees associated with a custody evaluation, in the absence of any objection thereto by the Appellant or evidence of her inability to pay such fees?

E. Is the Appellee entitled to sanctions against the Appellant and her attorney[?]

[¶ 4] The guardian ad litem (GAL) also filed a brief in which it is contended that, in the absence of a transcript of the proceeding conducted below, there is no basis for a finding that the district court abused its discretion. The GAL also asks that sanctions be imposed in her favor pursuant to W.R.A.P. 10.05.

## FACTS

[¶ 5] The facts are a bit difficult to sort out, in part because the hearing transcript was not designated as a part of the record, and in part because there are discrepancies in the various versions of the often troubling and tragic events that have led to this juncture and to what we hope is a conclusion to the custody dispute. The facts we set out below are those we deem necessary to an understanding of the current posture of this case and to the resolution of the issues brought to this Court by the parties. In keeping with the applicable standard of review, portions of this factual summary are posed in a light most favorable to the determinations made by the district court and giving Father the benefit of all favorable inferences and leaving out of our consideration the evidence presented by Mother. In many circumstances, both in the legal arena and in the counseling arena, Mother and her

attorneys failed to give adequate recognition to the reality that the various trial courts acted as fact-finders, and Mother's subjective version, or viewpoint, of many of the pivotal factual sequences were no longer of pertinence to the resolution of the issues at hand.

[¶ 6] In 1985, Mother and Father met in Laramie and began a lengthy, but ultimately unsuccessful, relationship. During the course of that relationship, they lived in Laramie, Denver, and Jackson. At times, Father worked for a company owned by Mother's father in both Denver and Jackson. Child was born in Jackson on December 26, 1989. The couple separated permanently in 1990, and, from that time until Father assumed custody of Child, he paid support to Mother. At first those support payments were voluntary, but eventually, on January 9, 1992, the district court issued an order establishing Child's paternity. That order also provided for visitation by Father with Child, for the payment of child support by Father in the amount of $400.00 a month, for Father to pay various expenses associated with Child's birth and the paternity proceedings, as well as for Father and Mother to "seek and maintain counseling." The record demonstrates that Father has always met his support obligations but did not meaningfully pursue the mandated counseling. Mother did pursue counseling with more earnestness but ultimately with results that were largely contrary to the intended purpose of counseling.

[¶ 7] Shortly after the termination of her relationship with Father, Mother began a second relationship with another man. That relationship produced a second child, although she and the father of that child did not marry either. In March of 1993, in part because of Child's misbehavior and in part because of postpartum depression suffered after the birth of her second child, Mother committed abusive acts on Child that resulted in life-threatening injuries, including a subdural hematoma (shaken baby syndrome) and severe genital bruising. Child was hospitalized in Salt Lake City for about one week.[2] At the conclusion of the hospital

---

2. Mother initially admitted her role in the injuries suffered by Child. Later, she recanted, or

stay, Child was placed in foster care for about three months. When Child was taken from Mother's care and placed in foster care, Mother fled to Las Vegas, Nevada, where she was eventually arrested and returned to Wyoming for the purpose of a criminal prosecution arising out of the abuse and neglect suffered by Child. Beginning in June of 1993, and continuing to this day, Child has been in the primary custody of Father. At the time Father assumed custody of Child, no determination was made with respect to child support (*i.e.*, Mother was not ordered to pay child support, and Father was not specifically relieved of his court-mandated support obligation of $400.00 a month to Mother). Mother has enjoyed visitation throughout most of this later time period, beginning with brief supervised visits and culminating in the liberal visitation that she now enjoys.

[¶ 8] Mother was prosecuted for the abuse and neglect set out above. As a sentence, she was placed on probation for three years under Wyo. Stat. Ann. § 7–13–301 (LexisNexis 2001) (emphasis added).[3] By order entered on May 16, 1996, Mother was discharged from probation, and under the terms of the governing statute, her criminal record would not reflect this incident as a conviction. On December 13, 1993, the juvenile court found Child to be a neglected child and temporarily placed him in Father's custody. By order entered on March 24, 1995, that custody was formalized, and the juvenile court directed the parties to file financial

---

attempted to recant, at various times blaming Father, new boyfriend, and babysitter, although she could back that up only with suppositions (and no criminal action was instituted against anyone except Mother). She even expressed a view that the personnel at the Jackson hospital had overreacted, causing Child to be placed on a life-flight to Salt Lake City. She also intimated in her deposition taken in 1997 that her role in Child's injuries were as an instrument of God in, more or less, visiting the sins of the Father on the Child. A mental health professional involved in this case noted with alarm Mother's relapse into denial. In addition, in her 1997 deposition, Mother expressed a view that she no longer considered the 1993 beating of Child to be "relevant" to a custody determination. She also opined that she did not understand why Child was still in therapy, and that she was only willing to pay for a therapist if she chose the therapist.

3. **§ 7–13–301. Placing person found guilty, but not convicted, on probation.**

(a) If a person who has not previously been convicted of any felony is charged with or is found guilty of or pleads guilty or no contest to any misdemeanor except any second or subsequent violation of W.S. 31–5–233 or any similar provision of law, or any second or subsequent violation of W.S. 6–2–501(a) or (b) by a household member as defined by W.S. 35–21–102 against any other household member or any similar provision of law, or any felony except murder, sexual assault in the first or second degree, aggravated assault and battery or arson in the first or second degree, the court may, with the consent of the defendant and the state and without entering a judgment of guilt or conviction, defer further proceedings and place the person on probation for a term not to exceed five (5) years upon terms and conditions set by the court. The terms of probation shall include that he:

(i) Report to the court not less than twice in each year at times and places fixed in the order;

(ii) Conduct himself in a law-abiding manner;

(iii) Not leave the state without the consent of the court;

(iv) Conform his conduct to any other terms of probation the court finds proper; and

(v) Pay restitution to each victim in accordance with W.S. 7–9–101 and 7–9–103 through 7–9–112.

(b) **If the court finds the person has fulfilled the terms of probation and that his rehabilitation has been attained to the satisfaction of the court, the court may at the end of five (5) years, or at any time after the expiration of one (1) year from the date of the original probation, discharge the person and dismiss the proceedings against him.**

(c) If the defendant violates a term or condition of probation at any time before final discharge, the court may:

(i) Enter an adjudication of guilt and conviction and proceed to impose sentence upon the defendant if he previously pled guilty to or was found guilty of the original charge for which probation was granted under this section; or

(ii) Order that the trial of the original charge proceed if the defendant has not previously pled or been found guilty.

(d) Discharge and dismissal under this section shall be without adjudication of guilt and is not a conviction for any purpose.

(e) There shall be only one (1) discharge and dismissal under this section or under any similar section of the probationary statutes of any other jurisdiction.

We have included in the above-quoted material a 2000 amendment to this statute which is not applicable to the instant matter, but which is included for the sake of a complete recitation of the statute as it now reads.

affidavits so that the district court could determine how much support Mother should pay to Father. By order entered on June 30, 1995, Mother was directed to pay Father child support in the amount of $50.00 a month. By order entered on June 12, 1996, the Department of Family Services was relieved of its supervisory responsibilities with respect to Mother's visitation with Child. On July 8, 1997, counsel for the parties entered into a "Memorandum of Understanding" which purported to settle all issues between the parties with respect to visitation and child support (the parties themselves did not sign the Understanding, and the district court held that the parties were not contractually bound by it). It was Mother's contention that she never did agree to that "Memorandum of Understanding," and she did not abide by it.

[¶ 9] From 1993, through the present time, Father lived in Laramie and Mother lived in Jackson, Lander, or Denver. At times Mother did not have a permanent address or phone number. In August of 1999, Mother relocated to Laramie to attend school. Because of Mother's refusal to abide by the "Memorandum of Understanding," especially with respect to visitation (but also with respect to paying child support and generally refusing to conform her conduct to that expected of parents in custody matters such as this one), an "Amended Petition to Enforce and/or Modify Custody and Visitation Provisions of Judgment and Order of Paternity" was filed in the district court in Albany County.[4] Mother's initial efforts were addressed to frustrating the proceedings in Albany County. She filed a motion to dismiss, which was denied by the district court. She filed a motion to disqualify the guardian ad litem, which the district court denied. The matter was finally heard on October 19 and 20, 2000, and the district court issued its decision letter on October 30, 2000. Mother was unable to agree on the wording of a final order, and so the entry of

the final order was delayed until December 14, 2000, at which time a final order was entered without Mother's approval. Briefing was completed on May 8, 2001, with the submission of Mother's reply brief. The case was considered by this Court at its expedited case conference on July 17, 2001, and was then assigned for preparation of an opinion.

[¶ 10] It is also important that we acknowledge that these proceedings were not initiated because Child was experiencing problems. As the district court concluded in its decision letter: "If nothing else, the parties agree and the evidence clearly shows that they have a well-behaved, well-adapted child. [Child] is popular in school, academically successful, and otherwise thriving in his current living environment."

## STANDARD OF REVIEW

[¶ 11] The district court acted under authority of Wyo. Stat. Ann. § 14–2–113 (LexisNexis 2001)[5]:

**§ 14–2–113. Effect and content of judgment or order; new birth certificate; determination of support; payments of support; continuing jurisdiction.**

(a) The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes.

(b) If the judgment or order of the court is at variance with the child's birth certificate, the court shall order that a new birth certificate be issued under W.S. 14–2–120.

(c) The judgment or order may contain any other provision directed against the appropriate party to the proceeding concerning the duty of support, the custody and guardianship of the child, visitation privileges with the child or any other matter in the best interest of the child. The judgment or order may direct the father to

---

4. For the sake of brevity, we will merely note here that a similar action was filed in 1998 in Teton County, but Mother succeeded in frustrating those proceedings. Since all the parties (Mother, Father, and Child), as well as many other witnesses, resided in Albany County, that court assumed jurisdiction over this matter.

5. This statute was substantially rewritten by the year 2000 amendments, but not in any manner that affects the outcome of this case.

pay reasonable medical expenses associated with the mother's pregnancy, confinement, the child's birth and on-going health care expenses incurred for the benefit of the child.

(d) All child support payments shall be established, paid, enforced and modified pursuant to title 20 of the Wyoming statutes. In the best interest of the child, a lump sum payment or the purchase of an annuity may be ordered in lieu of periodic payments of support.

(e) through (h) Repealed by Laws 2000, ch. 23, § 2.

[¶ 12] The district court's actions with respect to custody and visitation are governed by Wyo. Stat. Ann. §§ 20–2–201 through – 204 (LexisNexis 2001) [6]:

### § 20–2–201. Disposition and maintenance of children in decree or order; access to records.

(a) In granting a divorce, separation or annulment of a marriage or upon the establishment of paternity pursuant to W.S. 14–2–101 through 14–2–120, the court may make by decree or order any disposition of the children that appears most expedient and in the best interests of the children. In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:

(i) The quality of the relationship each child has with each parent;

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

(b) In any proceeding in which the custody of a child is at issue the court shall not prefer one (1) parent as a custodian solely because of gender.

(c) The court shall consider evidence of spousal abuse or child abuse as being contrary to the best interest of the children. If the court finds that family violence has occurred, the court shall make arrangements for visitation that best protects the children and the abused spouse from further harm.

(d) The court shall order custody in well defined terms to promote understanding and compliance by the parties. Custody shall be crafted to promote the best interests of the children, and may include any combination of joint, shared or sole custody.

(e) Unless otherwise ordered by the court, the noncustodial parent shall have the same right of access as the parent awarded custody to any records relating to the child of the parties, including school records, activities, teachers and teachers' conferences as well as medical and dental treatment providers and mental health records.

(f) At any time the court may require parents to attend appropriate parenting classes, including but not limited to, parenting classes to lessen the effects of divorce on children.

### § 20–2–202. Visitation.

----

**6.** These statutes were also revised by year 2000 amendments.

(a) The court may order visitation it deems in the best interests of each child and the court shall:

(i) Order visitation in enough detail to promote understanding and compliance;

(ii) Provide for the allocation of the costs of transporting each child for purposes of visitation;

(iii) Require either parent who plans to change their home city or state of residence, to give written notice thirty (30) days prior to the move, both to the other parent and to the clerk of district court stating the date and destination of the move.

§ 20-2-203. Jurisdiction for enforcement and modification.

(a) A court in this state which enters a custody order under W.S. 20-2-201 has continuing subject matter jurisdiction to enforce or modify the decree concerning the care, custody and visitation of the children as the circumstances of the parents and needs of the child require, subject to the provisions of the Uniform Child Custody Jurisdiction Act. A court which has jurisdiction to enforce or modify an order under this section may decline to exercise its jurisdiction if it finds it is an inconvenient forum under the circumstances of the case and that the court which entered the original order is a more appropriate forum and has jurisdiction as set forth in the Uniform Child Custody Jurisdiction Act.

(b) A court in any county in Wyoming in which the child has lived with his parents, a parent or a person acting as a parent for six (6) consecutive months immediately prior to commencement of the custody proceeding may assert subject matter jurisdiction and adjudicate any proceedings involving the child. Periods of temporary absence of any of the named persons shall be included as part of the six (6) month period.

(c) Any party seeking to enforce or modify a custody order pursuant to this section shall attach a certified copy of the custody order to the petition to be enforced or modified. A certified copy of an order entered by a Wyoming court providing for the care, custody or visitation of children may be filed in the office of the clerk of the district court of any county in this state in which either parent resides if neither parent resides in the county of original jurisdiction. The district court for the county in which the order is filed has jurisdiction to enforce the order, provided:

(i) Upon request of the district court for the county in which a certified copy of the order has been filed, the court which originally entered the order shall forward certified copies of the transcript of the court record and pleadings, orders, decrees, records of hearings, social studies and other pertinent documents relating to the original proceeding; and

(ii) The district court for the county in which a certified copy of the order has been filed shall give due consideration to the transcript of the record and all other documents submitted to it in accordance with paragraph (i) of this subsection.

(d) In any proceeding to enforce or modify an order concerning the care, custody and visitation of children, any required notice or pleading shall be served as provided by the Wyoming Rules of Civil Procedure.

§ 20-2-204. Enforcement and modification.

(a) Either parent may petition to enforce or modify any court order regarding custody and visitation.

(b) A court having jurisdiction under W.S. 20-2-203 may, upon appropriate motion of a party, require a parent to appear before the court and show just cause why the parent should not be held in contempt, upon a showing that the parent has willfully violated an order concerning the care, custody and visitation of the children. In order to enforce and require future compliance with an order the court may find that the parent is in contempt of court, award attorney's fees, costs and any other relief as the court may deem necessary under the circumstances to the party aggrieved by the violation of an order.

(c) A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a

showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20-2-201(a). In any proceeding in which a parent seeks to modify an order concerning child custody or visitation, proof of repeated, unreasonable failure by the custodial parent to allow visitation to the other parent in violation of an order may be considered as evidence of a material change of circumstances.

[¶ 13] Child support is also governed by statute. Wyo. Stat. Ann. §§ 20-2-301 through -315 (LexisNexis 2001). These statutes were also largely rewritten by year 2000 amendments.

 [¶ 14] The prime judicial objective in dealing with visitation and support is to serve the best interests of the child. *In re Paternity of IC*, 941 P.2d 46, 52-53 (Wyo. 1997). In custody and visitation matters, paramount consideration must be given to the needs of the child. The determination of the best interest of the child is a question for the district court. This Court will not over-

turn the district court's determination unless we are persuaded that there is an abuse of discretion. The ultimate standard is whether the district court reasonably could have concluded as it did. Under the abuse of discretion standard, this Court must view the evidence in the light most favorable to the determination that was made by the district court. We give the prevailing party all favorable inferences and do not consider the evidence presented by the unsuccessful party. *In re Paternity of IC*, 971 P.2d 603, 606 (Wyo.1999).

## DISCUSSION

### Admission of Evidence in Violation of W.R.E. 609[7]

 [¶ 15] Mother contends that the district court erred in admitting evidence concerning her 1993 abuse of Child. Mother correctly points out that the effect of Wyo. Stat. Ann. § 7-13-301 was to erase from her personal criminal history the occurrence of the criminal child abuse. However, it did not erase those events from the personal history of Child. The district court did not err in

---

7. W.R.E. 609 provides:

(a) General Rule.—For the purpose of attacking the credibility of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

(b) Time Limit.—Evidence of a conviction under this rule is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the ad-

verse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

(c) **Effect of pardon, annulment, or certificate of rehabilitation. Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one (1) year, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.**

(d) Juvenile Adjudications.—Evidence of juvenile adjudications is generally not admissible under this rule. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness (other than the accused) if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

(e) Pendency of appeal.—The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible.

(Emphasis added.)

admitting evidence concerning that abuse, or in considering that evidence in weighing the best interests of Child. The issue was the best interests of Child, not best interests of Mother. Nothing more need be said about this issue.

### Retroactive Modification of Child Support

[¶ 16] Mother contends that the district court erred in retroactively modifying child support. The essence of Mother's argument is that Father owed her child support for all months from March of 1993 (when the abusive acts were committed and Child taken from her custody) until June of 1996 (when Father filed his first petition to modify support—Mother also succeeded in frustrating that petition). Indeed, Mother contends Father may owe even more child support than that (up to and including December of 2000) and, therefore, that issue must be remanded to the district court for further proceedings. These contentions are wholly without merit.

[¶ 17] In making this argument, Mother relies on Wyo. Stat. Ann. § 20–2–311(d) (LexisNexis 2001) (emphasis added):

(d) An order for child support is not subject to retroactive modification except:

(i) Upon agreement of the parties; or

(ii) The order may be modified with respect to any period during which a petition for modification is pending, **but only from the date notice of that petition was served upon the obligee as provided by the Wyoming Rules of Civil Procedure,** if the obligor or the department is the petitioner, or to the obligor, if the obligee or the department is the petitioner.

[¶ 18] The district court determined that Father did not owe child support to Mother for the time period during which Mother did not have custody of Child. On one occasion, we held that a district court could not retroactively ratify an oral modification of a child support agreement agreed to by the parties. *State, Department of Family Services v. Peterson,* 957 P.2d 1307, 1310–12 (Wyo.1998); *also see Bellamy v. Bellamy,* 949 P.2d 875, 877 (Wyo.1997). It suffices here for us to note that the *Peterson* and *Bellamy* cases do not apply to the instant circumstances. The district court relied on little more than common sense in deciding that Father did not owe Mother child support arrearages because she did not have custody of Child and Father did. We hold that the district court did not abuse its discretion in so deciding, and we rely on that same thread of common sense in reaching our decision, as well as the legal maxim, "Reason is the soul of the law, and when the reason of any particular law ceases, so does the law itself (*Cessante ratione legis, cessant et ipsa lex* )." *Kerper v. Kerper,* 780 P.2d 923, 937 (Wyo.1989); *Collins v. Memorial Hospital of Sheridan County,* 521 P.2d 1339, 1341 (Wyo.1974); *Rodin v. State,* 417 P.2d 180, 196 (Wyo.1966); *McKinney v. McKinney,* 59 Wyo. 204, 135 P.2d 940, 952 (1943); R.H. Kersley, *Broom's Legal Maxims* at 97 (10th ed. 1939). The governing law serves to ensure that funds intended for the support of a child are, indeed, directed to that purpose. The reason for that governing law is fully met in this case.

### Did the Trial Court Err in not Considering Mother's Ability to Pay

[¶ 19] Mother contends that the district court did not give adequate consideration to Mother's ability to pay for treatment and counseling for Child, as well as for guardian ad litem fees and custody evaluation fees. The record fully supports a conclusion that the district court gave complete and thorough consideration to Mother's ability to pay. The record also reflects that, throughout the eight-year history of this case, Mother has attempted to frustrate the timely and just resolution of this matter. In particular, she has attempted to frustrate an accurate calculation of her annual income, and/or she was underemployed by her own choice. The record generously supports a conclusion that Mother has the ability to pay all sums ordered. Further, we find no abuse of discretion in the district court's order in this regard.

### Reasonableness of Guardian Ad Litem and Evaluation Fees

[¶ 20] Mother contends that the fees charged by the guardian ad litem and

other professionals who did evaluations of Child, Mother, and Father are not reasonable. This contention is not supported by reference to any materials in the record, nor is it supported by cogent argument or citation of pertinent authority. For these reasons, we will not consider the issue. *McLoughlin v. McLoughlin*, 996 P.2d 5, 8–9 (Wyo.2000).

### W.R.A.P. 10.05 Sanctions

■ [¶ 21] Father asks that Mother be sanctioned under W.R.A.P. 10.05. The GAL also seeks such sanctions. Rule 10.05 provides: "If the court certifies there was no reasonable cause for the appeal, a reasonable amount for attorneys' fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case. The amount for attorneys' fees shall not be less than one hundred dollars ($100.00) nor more than five thousand dollars ($5,000.00). The amount for damages to the appellee shall not exceed two thousand dollars ($2,000.00)." In this instance, we find that there was no reasonable cause for Mother's appeal. The district court's ruling was discretionary. However, even the incomplete record, brought to this Court by Mother, supports a conclusion that it would have been an abuse of discretion for the district court to have done anything other than that which it did, and that Mother's pursuit of this appeal was yet another example of her efforts to unnecessarily prolong the proceedings, as well as increase the cost of the proceedings. *See Stadtfeld v. Stadtfeld*, 920 P.2d 662, 664 (Wyo.1996); *Barnes v. Barnes*, 998 P.2d 942, 946 (Wyo.2000); and *Basolo v. Gose*, 994 P.2d 968 (Wyo.2000). Further, the record supports a conclusion that Mother acted knowingly and with a fairly complete understanding of the delays and disruptions she could cause, to the stability of Child's life,[8] to Father,[9] and to the courts. Within 15 days of the publication and filing of this opinion,

Appellee Father will submit a statement of attorney's fees and damages to this Court for our review so that an appropriate award can be ordered. W.R.A.P. 10.06.

■ [¶ 22] The GAL also seeks attorney's fees and damages. The certification made above applies with equal force to the GAL. Although not designated as an appellee, under our precedents the GAL functions as an agent of this Court and in aid of this Court, and it is appropriate that her request also be considered under W.R.A.P. 10.05. *Pace v. Pace*, 2001 WY 43, ¶¶ 21–26, 22 P.3d 861, ¶¶ 21–26 (Wyo.2001); *Clark v. Alexander*, 953 P.2d 145, 151–55 (Wyo.1998). Within 15 days of the publication and filing of this opinion, the GAL shall submit a statement of attorney's fees and damages so that an appropriate award can be ordered.

### CONCLUSION

[¶ 23] The order of the district court is affirmed in all respects. This appeal will remain on the Court's docket for the purpose of assessment of attorney's fees and damages.

---

8. As an example, we note that one goal expressed by Mother as recently as October of 2000 was to obtain full custody of Child, complete her education, and then move away from Laramie so that she and Child could be free of the disruptions caused by Father.

9. As an example, Mother testified Father was involved in a life of crime. When pressed on that issue, she based that conclusion on the fact that, on one occasion, father left to drive to Boulder, Colorado, at ten o'clock at night (and that could only mean he was involved in crime), and that he owned a Range Rover vehicle through his construction business (and his financial statement indicated he could not afford such an expensive vehicle, unless he was involved in crime).