2003 WY 86

**Delores A. KOLSCHEFSKY and Dwayne H. Kolschefsky, Appellants (Plaintiffs),**

v.

**Mark W. HARRIS and Harris Law Firm, P.C., Appellees (Defendants).**

No. 02–23.

Supreme Court of Wyoming.

July 15, 2003.

William R. Fix, Jackson, Wyoming, Representing Appellant.

V. Anthony Vehar of Vehar Law Offices, Evanston, Wyoming, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN *, and VOIGT, JJ., and BURKE, D.J.

GOLDEN, Justice.

[¶ 1]  Delores A. Kolschefsky and Dwayne H. Kolschefsky (Kolschefskys) filed a legal malpractice action against Mark W. Harris and Harris Law Firm, P.C. (Harris), claiming Harris was negligent in failing to file a medical malpractice claim on their behalf within the period of the statute of limitations. The district court entered summary judgment against Kolschefskys on the grounds that their voluntary bankruptcy petition constituted an anticipatory breach or repudiation of the contingent fee agreement with their attorney, discharging him from any further performance as their attorney.  We affirm the summary judgment for that reason and on the additional grounds that the Kolschefskys' interest in the underlying medical malpractice claim was transferred by operation of law to their bankruptcy estate.

## ISSUES

[¶ 2]  Kolschefskys state numerous issues:

- Should the lower court have even considered the summary judgment motion which was untimely raised?
- Did the filing of the bankruptcy reject the fee agreement and, if so, what is the effect of the rejection?
- Did Harris re-affirm the fee agreement by his actions?
- Was Harris required to give notice in writing of his termination of the fee agreement?
- Do the Rules of Professional Responsibility have any applicability?
- Do the Rules Governing Contingency Fee Agreements have any applicability?
- Did Harris act as the Kolschefskys' attorney both before and after the filing of the bankruptcy petition?

* Chief Justice at time of oral argument

- Even if the defense is deemed to have been timely asserted, then does the fact that the executory fee agreement was rejected nullify the attorney's responsibilities?
- Did Harris continue to represent the clients even after the bankruptcy petition was filed, and, if so, what is the effect of his continued representation?

Appellees state the issue from their perspective:

Was the district court correct in ruling that there was no genuine issue of material fact and that the Appellees were entitled to summary judgment as a matter of law?

## FACTS

[¶ 3]  Delores Kolschefsky was allegedly injured on May 13, 1998, while undergoing chiropractic manipulation to her neck.  On June 15, 1998, the Kolschefskys consulted with Attorney Harris, who agreed to represent them regarding a possible medical malpractice claim against the chiropractor.  The Kolschefskys and Harris signed a written contingent fee representation agreement on June 18, 1998.  Pursuant to the applicable statute of limitations, Wyo. Stat. Ann. § 1–3–107 (LexisNexis 2001), any action against the chiropractor would have had to be brought within two years of the alleged injury date of May 13, 1998.

[¶ 4]  Between June 1998 and August 1999, Harris investigated Kolschefskys' case and attempted to obtain a medical expert to testify regarding the chiropractic standard of care and its breach.  The sufficiency and reasonableness of those efforts is contested by the parties, as is Harris' statement that he terminated his representation agreement with the Kolschefskys verbally in August 1999.  Nevertheless, it is undisputed that on November 16, 1999, Kolschefskys filed a joint petition for Chapter 7 liquidation in the United States Bankruptcy Court for the District of Wyoming.  Despite the bankruptcy filing, Kolschefskys and Harris continued to have some limited discussions about the medical malpractice claim, and Harris made at least one contact to a potential expert witness on

their behalf in May 2000. Harris then returned their file to Kolschefskys in July 2000.

[¶ 5] Kolschefskys filed their bankruptcy pro se; they did not consult with or inform Harris before the filing or seek any bankruptcy advice from him after the filing. Mrs. Kolschefsky prepared the bankruptcy petition and schedules with the help of an instructional book and forms that she had purchased. In their bankruptcy filings, the Kolschefskys did not disclose as an asset their medical malpractice claim against the chiropractor or any legal malpractice claim against Harris. They also did not identify the contingent fee agreement with Harris either as a liability or an executory contract. Harris was listed as an unsecured creditor in the amount of $293 for costs he advanced in the medical malpractice matter.

[¶ 6] The bankruptcy trustee appointed to administer Kolschefskys' case filed his case report with the bankruptcy court on February 15, 2000, indicating that there were no assets to be administered for distribution to creditors and that all scheduled property should be abandoned back to the debtors. A Discharge of Debtor was issued by the bankruptcy court on March 15, 2000, and the bankruptcy case was closed on March 22, 2000.

## STANDARD OF REVIEW

[¶ 7] In reviewing summary judgment, we apply the same standards as the trial court, without affording any deference to the trial court's decisions on issues of law. *Bevan v. Fix*, 2002 WY 43, ¶ 13, 42 P.3d 1013, ¶ 13 (Wyo.2002). In *Bevan* we stated:

Summary judgment is appropriate if the record, viewed in the light most favorable to the non-moving party, reveals that no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law. *Worley v. Wyoming Bottling Co., Inc.*, 1 P.3d 615, 620 (Wyo. 2000); *Terry v. Pioneer Press, Inc.*, 947 P.2d 273, 275 (Wyo.1997); *Davis v. Wyoming Medical Center, Inc.*, 934 P.2d 1246, 1250 (Wyo.1997); W.R.C.P. 56(c). A fact is material if it establishes or refutes an essential element of a claim or defense.

*Tidwell v. HOM, Inc.*, 896 P.2d 1322, 1324 (Wyo.1995).

*Id.* Moreover, we may uphold the grant of summary judgment upon any proper legal ground finding support in the record. *Id.* at ¶ 26, 42 P.3d 1013.

## DISCUSSION

[¶ 8] The district court granted defendants' summary judgment based upon the effect of Kolschefskys' bankruptcy filing on the representation agreement between them and Harris. We concur with the district court's analysis.

[¶ 9] We have held that in a legal malpractice action, although the standard of care sounds in tort when it is stated in terms of a reasonably competent attorney, the basis of the action is contractual and an attorney/client relationship is an essential element for maintenance of the lawsuit. *Bowen v. Smith*, 838 P.2d 186, 196 (Wyo.1992); *Brooks v. Zebre*, 792 P.2d 196, 201 (Wyo.1990). Viewing the facts in the light most favorable to the Kolschefskys, we accept that Harris had a valid attorney/client contract with them in November 1999 when they filed for bankruptcy. That contract was executory in that both sides' performance obligations had yet to be fulfilled.

[¶ 10] Upon commencement of a bankruptcy case, the bankruptcy trustee has authority to assume or reject the debtor's executory contracts and leases. 11 U.S.C. § 365(a) (2000). In a Chapter 7 liquidation bankruptcy, "if the trustee does not assume or reject an executory contract ... within 60 days after the order for relief, ... then such contract is deemed rejected," *id.* at § 365(d)(1), and the rejection constitutes a breach of the contract relating back to the date the bankruptcy petition was filed. *Id.* at § 365(g).

[¶ 11] A party's rejection or breach of an executory contract is an anticipatory repudiation of the contract which relieves the other party of any remaining performance. *Roussalis v. Wyoming Medical Center, Inc.*, 4 P.3d 209, 254 (Wyo.2000). Thus a debtor's contractual relationship with a lawyer ends once a bankruptcy petition is

filed and the attorney/client contract is rejected or deemed rejected by the trustee. *Banov v. Kennedy,* 694 A.2d 850, 859 (D.C.App.1997) (citing *In re Taylor,* 91 B.R. 302, 312 (Bnkr.D.N.J.1988)). The representation agreement between Kolschefskys and Harris was terminated by operation of law upon their bankruptcy filing before the running of the statute of limitations, and there was no longer an attorney/client contract upon which to base a legal malpractice claim.

[¶ 12] Kolschefskys, however, raise additional arguments based on the alleged post-petition reaffirmation of the attorney/client agreement, or the creation of a new agreement. We will therefore address an additional ground for upholding the summary judgment that would apply to any alleged post-petition malpractice.

[¶ 13] The commencement of a bankruptcy case creates a bankruptcy estate as a discrete legal entity, separate and apart from the debtor, that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (2000). This estate includes all causes of action existing on the petition date, whether or not a lawsuit has been commenced, and no matter how inchoate or unliquidated the underlying claim. *Dorr, Keller, Bentley & Pecha v. Dorr, Bentley & Pecha,* 841 P.2d 811, 815 (Wyo.1992) (citing *Delgado Oil, Inc. v. Torres,* 785 F.2d 857 (10th Cir.1986), and *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05 n. 8, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)). The estate exists by operation of law and is not limited to that property disclosed by the debtors on their bankruptcy schedules.

[¶ 14] Therefore, the Kolschefskys' medical malpractice claim against Mrs. Kolschefsky's chiropractor became part of their bankruptcy estate as of November 16, 1999, such that they no longer had any interest in the claim and no standing to bring a lawsuit based on that claim. *Dorr, Keller, Bentley & Pecha,* 841 P.2d at 816. Although not argued by Harris, the same analysis would apply to any legal malpractice claim against Harris that accrued prior to the bankruptcy filing date. This result occurs by operation of law,

regardless of the intent or understanding of the parties.

[¶ 15] Property may be abandoned by the trustee after notice and a hearing, 11 U.S.C. § 554(a) (2000), or upon request of a party and order of the court. *Id.* at § 554(b). In addition, *scheduled* property that is not otherwise administered by the trustee is automatically abandoned to the debtor when the case is closed. *Id.* at § 554(c). However, if not administered in the bankruptcy case or abandoned pursuant to one of these provisions, property remains in the estate even after discharge of the debtor and even when the case is closed. *Id.* at § 554(d).

[¶ 16] The Kolschefskys did not disclose any medical malpractice or legal malpractice claim to the bankruptcy court, and there is no evidence of a hearing in that court on the issue of abandonment of these claims to the debtors. The automatic abandonment provision upon closing of a bankruptcy case pursuant to 11 U.S.C. § 554(c) is expressly limited to property that is properly scheduled. Any interest of the Kolschefskys accruing before their bankruptcy filing became and remains vested in their bankruptcy estate. *Barowsky v. Serelson,* 102 B.R. 250, 253 (D.Wyo.1989), *aff'd,* 946 F.2d 1516 (10th Cir.1991). The bankruptcy trustee had exclusive standing to pursue that interest on behalf of the estate. *Dorr, Keller, Bentley & Pecha,* 841 P.2d at 815. Therefore, even if a re-affirmed or new attorney/client contract was formed between Kolschefskys and Harris after the bankruptcy filing, and even if Harris' post-petition representation fell below the standard of a reasonably competent attorney, the Kolschefskys could not have been injured where they no longer owned any medical malpractice claim and would have had no standing to assert such a claim in court.

### CONCLUSION

[¶ 17] Because the Kolschefskys' bankruptcy filing terminated both their contractual relationship with their attorney and their property interest in a pre-petition medical malpractice claim, they had no standing to pursue either a legal malpractice claim against their attorney or a medical malprac-

tice claim against the medical provider. Summary judgment is appropriate, not because there are no contested issues of fact, but because the contested factual issues are not material to the controlling and dispositive federal law. We need not address other issues raised by the Kolschefskys. Summary judgment in favor of Harris is affirmed.

HILL, Chief Justice, dissenting.

[¶ 18] I respectfully dissent because I am not convinced that the bankruptcy statutes are intended to provide the kind of protection to an alleged tortfeasor that the majority ascribes to them. It is my conclusion that the standard of review governing summary judgment, the existence of genuine issues of material fact, and the applicable law require that this case be remanded for trial wherein the fact-finder will have to resolve the import of those disputed facts.

[¶ 19] I agree with the standard of review articulated by the majority, but I do not think the opinion is faithful to that standard in analyzing this case, nor do I concur with the law the majority applies to the facts of the case.

[¶ 20] The one truly undisputed fact is that the Kolschefskys, acting pro se, filed a bankruptcy petition in November of 1999, and they received the protections available to debtors in the bankruptcy court. In their bankruptcy petition, they did not list as an asset a medical malpractice claim against a chiropractor who had treated Mrs. Kolschefsky, nor did they list a legal malpractice claim against Harris. Of course, at that point they did not know that they had such a claim against Harris because the gravamen of their complaint against him did not occur until more than six months after the filing of the bankruptcy petition.

[¶ 21] Citing 11 U.S.C. § 365(d)(1), the majority appears to conclude that the bankruptcy proceeding operated to relieve Harris of any obligation he had to the Kolschefskys, as their attorney in the medical malpractice action, even though Harris continued to act in that matter until into the late spring and early summer of the year 2000.[1]

[¶ 22] The majority comes close to acknowledging that Harris may never have effectively terminated his contract with the Kolschefskys (because such a termination would have had to have been in writing, and it was not), may have reaffirmed his pre-November 1999 contract with the Kolschefskys through his actions in continuing to represent them, and/or that he may have entered into a new contract with them. These are, of course, some of the factual issues that need to be resolved by a fact-finder. However, perhaps in recognition of these factual issues, the majority then retreats to another basis on which the summary judgment order should be affirmed.

[¶ 23] In ¶ 13 of the majority's opinion, this second basis for affirmance is that, by operation of law, all assets of the Kolschefskys went into the bankruptcy estate, including all causes of action existing on the date of the petition, "whether or not a lawsuit has been commenced, and no matter how inchoate or unliquidated the underlying claim.... The estate exists by operation of law and is not limited to that property disclosed by the debtors on their bankruptcy schedules." Continuing, the majority concludes that the claim against Mrs. Kolschefsky's chiropractor became a part of the bankruptcy estate and, therefore, she no longer had any interest whatever in it. I am not convinced that the authority cited entirely supports that proposition.

[¶ 24] However, the majority makes a secondary conclusion, which I do not think

1. Construing, or deciphering, a statute such as 11 U.S.C. § 365 is a daunting task. The statute itself is nine pages long (in USCS), and the interpretive notes and decisions section associated with that statute take up over 175 pages. Merely as an example, I point out that the general purpose of that section is to allow a debtor to reject an executory contract in order to relieve the bankruptcy estate of burdensome obligations while at the same time providing a means where-

by the debtor can force others to continue to do business with it when bankruptcy filings might otherwise make them reluctant to do so. 11 USCS § 365, n. 2 (1995); *Chateaugay Corporation v. LTV Steel Company,* 10 F.3d 944, 954–55 (2nd Cir.1993). While § 365 may "speak" to the issues in this case in some way I am unable to ascertain, I am at least convinced that, to the extent it speaks, it does not say what the majority attributes to it.

can stand scrutiny at all: "Although not argued by Harris, the same analysis would apply to any legal malpractice claim against Harris that accrued prior to the bankruptcy filing date. This result occurs by operation of law, regardless of the intent or understanding of the parties." In my view, that conclusion is not consonant with the facts (*i.e.*, Harris did not commit his malpractice until the middle of the year 2000 when he let the statute of limitations run on Mrs. Kolschefsky's claim against her chiropractor), nor is the proposition supported by substantiating authority. It is my opinion that the pertinent authority is to the contrary. Legal malpractice claims are not the sort of executory contracts that are included within the reach of 11 U.S.C. § 365(d)(1). Although I agree with the majority that the claim against the chiropractor is an asset of the bankruptcy estate, and apparently is being treated as such while this litigation proceeds, some portions of that claim also may well not become assets of the bankruptcy estate. 11 U.S.C. §§ 522(d)(11)(D) and (E) (1993) (exempting a payment, not to exceed $7,500, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, as well as payments for loss of future earnings). 2 David D. Epstein, Steve H. Nickles, and James J. White, *Bankruptcy*, §§ 8–18 at 510–515 (1992); 11 USCS § 522, nn. 178–80 (1997); 11 USCS § 541, n. 72 (1997).

[¶ 25] However, that is beside the point because the medical malpractice claim is not at issue here. It is the legal malpractice claim that is now of immediate and practical importance to the Kolschefskys, and the pertinent authority holds that such a claim is not affected by a bankruptcy filing. Because it is a uniquely personal matter, a cause of action for legal malpractice is not assignable and, therefore, does not become a part of the estate of the bankrupt. *Christison v. Jones*, 83 Ill.App.3d 334, 39 Ill.Dec. 560, 405 N.E.2d 8, 11–12 (1980); Francis M. Dougherty, Annotation, *Assignability of Claim for Legal Malpractice*, 40 A.L.R.4th 684 (1985 and Supp.2001); and *see* 1 Epstein, Nickles, and White, *supra*, § 3–14b at 168–69.

[¶ 26] Finally, I do not think the bankruptcy statutes have such a "long-arm" as to provide protection to an alleged tortfeasor under circumstances such as these. The bankruptcy statutes serve very strictly defined purposes and principally affect the debtor-creditor relationship. The excerpts taken by the majority from the bankruptcy statutes are not designed to define or limit the sort of relationship, or the facts and circumstances, that are at issue here. *See generally* Daniel R. Cowans, *Bankruptcy Law and Practice*, 7th ed. (1998 and Supp. 2000). Reason is the soul of law, and when the reason of any particular law ceases, so does the law itself. *GGV v. JLR*, 2002 WY 19, ¶ 8, 39 P.3d 1066, ¶ 8 (Wyo.2002).

[¶ 27] I would reverse the order of the district court and remand for further proceedings consistent with what I have set out above.

BURKE, District Judge, dissenting, with whom HILL, Chief Justice, joins.

[¶ 28] I respectfully dissent. I find that genuine issues of material fact exist which preclude summary judgment.

[¶ 29] For purposes of summary judgment we must provide all favorable inferences to be gleaned from the evidence to the party opposing the motion. In that vein, we must take as true the unrefuted opinion testimony of the Kolschefskys' expert. According to that expert, Mr. Harris breached his duties to the Kolschefskys by failing to properly and timely investigate the claim, failing to advise the Kolschefskys as to the applicable statute of limitations, failing to advise the Kolschefskys of the impact of bankruptcy upon the client's chiropractic malpractice claim, and failing to take action during the bankruptcy to preserve the chiropractic malpractice claim after receiving notice that the bankruptcy had been filed. There is factual support for those opinions in the record.

[¶ 30] The record demonstrates that Harris was aware that the Kolschefskys were having financial difficulties. As a result of Mrs. Kolschefsky's chiropractic malpractice injury, the Kolschefskys accumulated medical bills amounting to $30,000. In a discussion with Harris, Mr. Kolschefsky brought up the

subject of bankruptcy and Harris told him that it might not be a bad idea. During the course of their relationship, Harris sent numerous letters to creditors on behalf of the Kolschefskys to stave off collection efforts while he investigated the chiropractic malpractice claim. Harris never advised the Kolschefskys that filing bankruptcy could negatively impact their chiropractic malpractice claim.

[¶ 31] Facts supporting an ongoing attorney-client relationship post-bankruptcy also appear in the record. The Kolschefskys believed that Harris continued to represent them and was pursuing a claim against the chiropractor, even after the bankruptcy. Despite the bankruptcy filing in November, 1999, Harris sent a letter on April 25, 2000, to a treating neurologist. In the letter, Harris requested information about Mrs. Kolschefsky, referring to her as his client. In a follow-up telephone conversation on May 1, 2000, Harris informed the neurologist that he was not qualified to give an expert opinion in Mrs. Kolschefsky's case but asked if he could identify any chiropractors who could give an opinion. Harris never communicated any termination of his representation to the Kolschefskys in writing.

[¶ 32] I do not take issue with the majority's analysis that by operation of bankruptcy law the executory fee agreement was breached by the Kolschefskys. However, I disagree that the effect of that breach resulted, as a matter of law, in the termination of the attorney-client relationship. The majority equates the duty to perform as specified in the contract with the professional duty arising from the attorney-client relationship. I discern a difference. The latter imposes an obligation to meet a standard of care. The standard of care is not set forth in the fee agreement and must be established by expert testimony.

[¶ 33] The majority summarily concludes that the breach ended the attorney-client relationship because it constituted an anticipatory repudiation of the attorney-client contract and relieved Harris from further responsibilities on behalf of the Kolschefskys. I interpret the facts differently, and based upon his conduct, so did Harris. He continued to hold himself out as the Kolschefskys' attorney months after the bankruptcy. Harris never provided written notice of termination and did not return the Kolschefskys' file to them until the Kolschefskys' sought new counsel. Additionally, Harris failed to raise bankruptcy as an affirmative defense in the legal malpractice case for many months and then only after the deadline for dispositive motions had passed.[1]

[¶ 34] We have recognized that the existence of an attorney-client relationship will often present an issue for the trier of fact. *Meyer v. Mulligan*, 889 P.2d 509, 513–514 (Wyo.1995). In this case material issues of fact concerning the duration of the attorney-client relationship render summary judgment inappropriate. The doctrine of anticipatory repudiation should not be applied when the facts are equivocal as to whether the party on the receiving end of a breach considered it a repudiation of the contract. Rather, the Kolschefskys' bankruptcy is more properly viewed as an element of damage incurred by them, rather than as an event which eliminates any possible claims the Kolchevskys may have against Harris, *e.g., Laiben v. Roberts*, 936 S.W.2d 220 (Mo.Ct.App.1996).

[¶ 35] I also cannot agree that the Kolschefskys lacked standing to pursue their claim against Harris.

[¶ 36] In concluding that Harris did not owe any duties to the Kolschefskys, the majority limits its inquiry to the point in time that the statute of limitations lapsed, after the bankruptcy was concluded. The majority concludes that any pre-petition misconduct by Harris is not actionable because it became, and remains, property of the bankruptcy estate. I disagree. The cause of action resulting from those acts did not be-

---

1. The majority does not address the Kolschefskys' assertion that the district court abused its discretion by considering the late-filed motion. I agree that we are unable to review this issue because the Kolschefskys' brief cites to documents that do not appear in the record on appeal. However, I find that Harris' failure to raise the bankruptcy issue until very late in the proceedings indicates that Harris did not ascribe to the bankruptcy the significance that the majority does in its opinion.

come part of the bankruptcy estate because it was not a legally cognizable interest when the Kolschefskys filed bankruptcy.

[¶ 37] A bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case...." 11 U.S.C. § 541(a). The majority states that this includes "all causes of action existing on the petition date, whether or not a lawsuit has been commenced, and no matter how inchoate or unliquidated the underlying claim." I agree that causes of action become part of the bankruptcy estate, but I do not believe that the authority cited supports the conclusion that the Kolschefskys had a cause of action against Harris when they filed for bankruptcy.

[¶ 38] The majority cites *DKBP v. Dorr, Bentley & Pecha*, 841 P.2d 811, 815 (Wyo. 1992) to demonstrate that the Kolschefskys had an interest in property, that being an unliquidated or inchoate claim against Harris. However, what we stated in that case was:

> The filing of the petition in the bankruptcy court on February 1, 1990, created an estate. That estate consisted of *"all* legal or equitable interests of the debtor [D & A] in property" wherever located and by whomever held. 11 U.S.C. § 541 (1988) (emphasis added). **This includes any and all causes of action existing on the petition date.** *Delgado Oil, Inc. v. Torres*, 785 F.2d 857 (10th Cir.1986).
>
> Property of the estate includes all of the debtor's inchoate and unliquidated interests. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05 n. 8, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) **(Estate succeeds to no more or greater causes of action against third parties than those held by the debtor.)** Property of the estate includes "any interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541 (a)(7). Property of the estate in a Chapter 7 case of a non-individual includes all property, income, receivables, causes of action, etc., generated or acquired during a preceding Chapter 11 case. *Id.*
>
> As a partner in DKBP, D & A had an interest in managing that partnership.

*See,* e.g., Wyo. Stat. § 17–13–501(iii)(1989). That management interest passed to the estate when D & A filed for bankruptcy. *In re Cardinal Industries, Inc.*, 105 B.R. 834, supplemented 109 B.R. 743 (Bankr. S.D.Ohio 1989).

> **When a cause of action accrues before the bankruptcy petition, that claim is property of the estate, regardless of whether or not a lawsuit based upon that cause of action had been commenced.** *In re James*, 120 B.R. 802 (E.D.Pa.1990); *In re E.F. Hutton Southwest Properties, II, Ltd.*, 103 B.R. 808 (N.D.Tex.1989); *In re Johns–Manville Corporation*, 57 B.R. 680 (S.D.N.Y.1986).

*Id.* (Bold emphasis added.)

[¶ 39] We acknowledged that a *cause of action* is a form of property encompassed by the bankruptcy code and that a trustee succeeds to *a cause of action* held by a debtor at the time the bankruptcy petition is filed. *Id.* at 816. (citing *Cain v. Hyatt*, 101 B.R. 440 (E.D.Pa.1989)).

[¶ 40] In *DKBP*, we cited a footnote from *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) for the proposition that a debtor's bankruptcy estate includes inchoate and unliquidated interests. 841 P.2d at 815. However, we clarified that statement with a parenthetical explaining that the "[e]state succeeds to no more or greater causes of action against third parties than those held by the debtor." *Id.* Moreover, while the scope of 11 U.S.C. § 541(a) is broad, it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case. *Whiting Pools, Inc.*, 462 U.S. at 204–5, n. 8, 103 S.Ct. 2309; *see also* S.Rep. No. 95–989, 95th Cong. 2nd Sess. at 1, 82, U.S.Code Cong. & Admin.News 1978 at 5787, 5868.

[¶ 41] The analysis in *DKBP* which speaks of a *cause of action* is largely ignored by the majority. Not surprisingly then, the majority does not examine whether the Kolschefskys had a cause of action against Harris when they filed for bankruptcy.

[¶ 42] It is state law, and not federal bankruptcy law, which determines whether a

debtor has an interest in a particular item of property and the extent of that interest at the commencement of the bankruptcy case. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Ellwanger v. Budsberg (In re Ellwanger)*, 140 Bankr. 891, 900 (Bankr.W.D. Washington 1992).

[¶ 43] In Wyoming, a cause of action accrues only when forces wrongfully put in motion produce injury. *Duke v. Housen*, 589 P.2d 334, 343 (Wyo.1979) *cert. denied* 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86; *Cross v. Berg Lumber Company*, 7 P.3d 922, 930 (Wyo.2000). We have recognized that a cause of action exists when the plaintiff could have first filed and prosecuted the action to successful completion. *Gillis v. F & A Enterprises*, 934 P.2d 1253, 1255 (Wyo.1997).

[¶ 44] The Kolschefskys' claim against Harris is one for damages based upon legal malpractice. A cause of action for legal malpractice based upon a breach of a professional duty is a tort. *Rino v. Mead*, 2002 WY 144, ¶ 16 n. 1, 55 P.3d 13 ¶ 16 n. 1 (Wyo. 2002). A tort is not complete and actionable until all of the elements of the tort: duty, breach, proximate cause and damages are present. *Nowotny v. L & B Contract Industries, Inc.*, 933 P.2d 452 (Wyo.1997). The Kolschefskys could not have brought a malpractice claim against Harris as of the date they filed for bankruptcy because all of the elements of the tort were not yet present. The Kolschefskys claim damages resulting from their discharge in bankruptcy and from the loss of their chiropractic malpractice claim. These damages did not arise until after the bankruptcy was filed.

[¶ 45] The Kolschefskys claim that Harris' failure to properly advise them and diligently pursue their chiropractic malpractice claim forced them to file bankruptcy. Questions of fact appear in the record concerning whether actions of Harris caused or contributed to the bankruptcy filing. A question also exists concerning the appropriate standard of care involved in representing a client with a personal injury claim who is in financial distress. The Kolschefskys' expert opines that under these circumstances, the standard of care requires counseling that bankruptcy could impact the personal injury claim. If attributable to Harris, any damages resulting from the discharge in bankruptcy could not have occurred until the bankruptcy was concluded. *Laiben*, 936 S.W.2d 220.

[¶ 46] As to the chiropractic malpractice claim, I agree with the majority that it remains property of the bankruptcy estate. The damage suffered by the Kolschefskys is the loss of that claim. Arguably, the Kolschefskys first suffered damage immediately after the filing of the bankruptcy when the ownership of their chiropractic malpractice claim was transferred to their bankruptcy estate.[2] Alternatively, damages may have arisen when the statute of limitations elapsed. Regardless of when the damages arose after the bankruptcy filing, damages did not exist prior to the filing.

[¶ 47] A cause of action against Harris did not exist *as of* commencement of the bankruptcy because the Kolschefskys did not incur any damages until after the bankruptcy was filed. Accordingly, the cause of action against Harris never became property of the bankruptcy estate. The Kolschefskys were the rightful owners of the legal malpractice claim when they filed their complaint against Harris.

[¶ 48] The district court erred in granting the Defendants' motion for summary judgment. I would reverse and remand for further proceedings.

---

2. However, the claim may not have been truly lost at that point. There is a possibility that the loss of ownership of the claim may have been remedied before the statute of limitations passed. In the opinion of Kolschefskys' expert, an attorney in Harris' position could pursue several options to recover a claim from the bankruptcy estate. Harris could have sought to recover the claim from the bankruptcy estate by either offering to purchase the claim or requesting that the trustee abandon the claim back to the Kolschefskys. I consider the availability and likely success of any of these options suitable issues for trial.