# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 63

APRIL TERM, A.D. 2017

*June 1, 2017*

CHAD DOCKTER,

**Appellant**
**(Defendant),**

v.

S-16-0262

THE STATE OF WYOMING,

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Public Defender. Argument by Mr. Alden.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General. Argument by Mr. Delicath.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]   Appellant Chad Dockter challenges two of several convictions arising out of a violent incident with his former girlfriend.  He claims the evidence presented by the State was insufficient to support his convictions of kidnapping and misdemeanor theft of a cell phone.  We affirm.

## ISSUES

[¶2]   1.  Was the evidence sufficient to establish that Appellant unlawfully confined the victim as required by the kidnapping statute, Wyo. Stat. Ann. § 6-2-201(a) (LexisNexis 2015)?

2.  Did the evidence sufficiently establish misdemeanor theft of an Apple iPhone 5?

## FACTS

[¶3]   Viewing the evidence in a light most favorable to the State and resolving any evidentiary conflicts in its favor, *see Barrowes v. State*, 2017 WY 23, ¶ 3, 390 P.3d 1126, 1126 (Wyo. 2017)*,* the pertinent facts established at trial are as follows.  Appellant and the victim Amanda Yearsley dated for six months before Ms. Yearsley ended the relationship in May 2015.  Ms. Yearsly then met with Appellant to inform him that she was pregnant in July of 2015.  After that, the two communicated sporadically through early August 2015.

[¶4]   On August 14, 2015, Ms. Yearsley was at a bar where she worked, although she was not on duty, when Appellant showed up.  He stopped by to repay some money he owed her, and wanted to talk, but eventually he started to cause a scene.  Because of his belligerent behavior, Ms. Yearsley suggested that they take the conversation back to her place.  While they were at Ms. Yearsley's apartment, she used a smartphone, an iPhone 6, that Appellant had given her daughter.  This apparently annoyed Appellant, so he snatched it from her and left.  After Appellant departed with her cell phone, Ms. Yearsley called the police to report it, but she declined to pursue charges.

[¶5]   The next day, August 15, Ms. Yearsley activated her old iPhone 5.  Later that day, while she was in the shower getting ready for work, the shower curtain swung open, and there was Appellant.  He grabbed her by the throat, and took her out of the shower and into the bedroom.  As she started to scream, he placed his other hand over her nose and mouth.  Once in the bedroom, Appellant put Ms. Yearsley on the bed and told her she needed to listen to him and that she had no choice but to do so.  She continued to squirm and scream, and Appellant body-slammed her onto the ground with one hand still on her throat and the other over her nose and mouth.  Ms. Yearsley struggled to breathe and

1

almost blacked out, which caused her to become still. Appellant then removed his hands and let her sit up.

[¶6] Once free from Appellant's grasp, Ms. Yearsley ran to the bathroom and turned off the shower. She picked up a piece of the shower rod that had fallen on the floor and tried to defend herself with it. It was no use, however, as Appellant followed her to the bathroom and was able to pick her up in a "bear hug." However, she managed to grab her reactivated iPhone 5 from the bathroom counter before Appellant carried her out to the living room.

[¶7] Once in the living room, Appellant sat down on the couch with Ms. Yearsley on his lap, still clenched in a bear hug. Appellant told her how much he loved her and that she just needed to listen to him. Unbeknownst to him, Ms. Yearsley had succeeded in dialing 911 and hitting send. When a dispatcher answered the 911 call, Appellant discovered what she had done. He grabbed the phone, punched Ms. Yearsley in the thigh, exited through the front door, and took off in his car. Ms. Yearsley ran outside after him, but because she was still naked, she returned to the house and called 911 from her house land line. Law enforcement officers arrived soon thereafter.

[¶8] Appellant was charged, *inter alia,* with kidnapping with voluntary release in violation of Wyo. Stat. Ann. § 6-2-201,[1] and the Information specifically alleged that he unlawfully confined Yearsley with the intent to inflict bodily injury on or to terrorize her.

---

[1] That statute provides as follows:

> (a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or if he unlawfully confines another person, with the intent to:
>> (i) Hold for ransom or reward, or as a shield or hostage;
>> (ii) Facilitate the commission of a felony; or
>> (iii) Inflict bodily injury on or to terrorize the victim or another.
>
> (b) A removal or confinement is unlawful if it is accomplished:
>> (i) By force, threat or deception; or
>> (ii) Without the consent of a parent, guardian or other person responsible for the general supervision of an individual who is under the age of fourteen (14) or who is adjudicated incompetent.
>
> (c) If the defendant voluntarily releases the victim substantially unharmed and in a safe place prior to trial, kidnapping is a felony punishable by imprisonment for not more than twenty (20) years.
>
> (d) If the defendant does not voluntarily release the victim substantially unharmed and in a safe place prior to trial, kidnapping is a felony punishable by imprisonment for not less than twenty (20) years or for life except as provided in W.S. 6-2-101.

He was also charged with misdemeanor theft in violation of Wyo. Stat. Ann. § 6-3-402.[2] A jury found Appellant guilty on those counts, among others. The district court sentenced him to eight to twelve years for kidnapping and six months for misdemeanor theft.[3]

## STANDARD OF REVIEW

[¶9] Appellant challenges the sufficiency of evidence to support two of his convictions. "When reviewing a sufficiency of the evidence claim, we must accept as true the State's evidence and give it the benefit of all reasonable inferences which can be drawn from it." *Barrowes*, ¶ 15, 390 P.3d at 1128. We do not consider contradictory evidence presented by Appellant. *Id.* We will neither reweigh the evidence nor substitute our judgment for that of the jury, as our task is solely to determine whether a jury could have reasonably concluded that each of the elements of the crime was proven beyond a reasonable doubt. *Id.*

## DISCUSSION

### *Kidnapping*

[¶10] Appellant contends that his conduct did not amount to kidnapping. Specifically, he claims that the evidence was insufficient to establish confinement as required by Wyoming's kidnapping statute. After studying the statute and consulting controlling case law, we must disagree.

[¶11] To find the answer to this question, we must examine Wyoming's kidnapping statute and apply our usual principles of statutory interpretation. Criminal statutes must be strictly construed and are not to be enlarged by implication or extended by inference

---

[2] That statute provides as follows:

> (a) A person is guilty of theft if he knowingly takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the other person of the property.
>
> *   *   *
>
> (c) Theft is:
>
> *   *   *
>
> (iii) A misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both, if the value of the property is less than one thousand dollars ($1,000.00).

[3] The other counts for which Appellant was convicted and sentenced are not germane to this appeal, as he does not raise any issues regarding them.

or construction. *Bohling v. State*, 2017 WY 7, ¶ 18, 388 P.3d 502, 505-06 (Wyo. 2017). Our chief consideration is capturing the legislature's intent. *Yager v. State*, 2015 WY 139, ¶ 11, 362 P.3d 777, 780 (Wyo. 2015).

[¶12] The crime of kidnapping has evolved over the years, and conduct that constitutes this crime varies from one jurisdiction to the next. *See Vaught v. State*, 2016 WY 7, ¶¶ 15-29, 366 P.3d 512, 516-19 (Wyo. 2016).[4] Some states have adopted the Model Penal Code definition of kidnapping, which is as follows:

> A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or *if he unlawfully confines another for a substantial period in a place of isolation*, with any of the following purposes:
>
> \* \* \*
>
> (c) to inflict bodily injury on or to terrorize the victim or another[.]

Model Penal Code § 212.1 (Am. L. Inst. 1980); *Vaught*, ¶ 22, 366 P.3d at 517 (emphasis added). It is easy to observe that certain words limit the range of conduct constituting the crime, like the adjective "substantial" as it relates to the period of confinement. *See Doud v. State*, 845 P.2d 402, 405 (Wyo. 1993) (declining to incorporate the MPC's "substantial period" language into Wyoming's kidnapping statute).

[¶13] Now compare Wyoming's kidnapping statute. The legislature decided to omit some of the limiting language in the Model Penal Code:

> (a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal, or *if he unlawfully confines another person*, with the intent to:
>
> \* \* \*
>
> (iii) Inflict bodily injury on or to terrorize the victim or another.

---

[4] We recently reviewed the history of this crime, *see Vaught*, ¶¶ 15-29, 366 P.3d at 516-19, and need not do so again.

Wyo. Stat. Ann. § 6-2-201(a)(iii) (emphasis added). Wyoming's kidnapping statute is plainly different and covers more conduct than that prohibited by jurisdictions which have adopted the Model Penal Code provision verbatim.[5]

[¶14] We have had several occasions to interpret our unique kidnapping statute and to confirm its breadth. *See Vaught*, ¶ 22-26, 366 P.3d at 517-18; *Doud,* 845 P.2d at 405; *Darrow*, 824 P.2d at 1270; *Keene*, 812 P.2d at 150. Perhaps most helpful in this case is our opinion in *Doud*. There, as here, an issue was whether there was sufficient evidence that the defendant unlawfully confined the victim within the meaning Wyo. Stat. Ann. § 6-2-201. This Court studied the statute and compared it to the Model Penal Code version. *Doud*, 845 P.2d at 405-06. We determined that, unlike the Model Penal code, "[o]ur statute establishes no durational requirement for the period of confinement." *Id.* at 405. We explained:

> [T]his Court's role is not to graft additional language onto a statute. Wyoming's Legislature adopted a kidnapping statute which is similar to the Model Penal Code's definition. The Legislature clearly chose not to adopt that part of the Model Penal Code's kidnapping definition which requires that the confinement be for a "substantial period in a place of isolation." When the Legislature has made such a clear decision regarding statutory language, it would be particularly inappropriate for this Court to interpret the Legislature's intent as being something other than what is plainly stated in the statute. The fact that in *Darrow* we interpreted our statute to include an isolation requirement like the Model Penal Code's requirement does not mean that we should also require confinement for a substantial period. *Darrow* presented this Court with the question of whether confinement could mean confinement within the victim's residence. To resolve that issue, we held that confinement means isolation from the "usual protections of society" and may include confinement within the victim's home. The question of what confinement meant was an ambiguity which we had to resolve. However, in contrast, there is no ambiguity surrounding whether a confinement must be for a substantial period because the Legislature deliberately chose not to adopt the "substantial period" language. Admittedly, by choosing not to adopt that language, the Legislature has

---

[5] Although we have consulted the comments and notes to the Model Penal Code in previous kidnapping cases, Wyoming's kidnapping statute is different enough in certain respects to sometimes render those comments and notes unhelpful. *See Doud*, 845 P.2d at 405; *Darrow v. State*, 824 P.2d 1269, 1270 (Wyo. 1992); *Keene v. State*, 812 P.2d 147, 150 (Wyo. 1991).

opened the door for defendants in Wyoming to be charged with kidnapping for a much broader range of conduct than would be possible under the Model Penal Code. However, that was a choice for the Legislature, not for this Court.

*Doud*, 845 P.2d at 406 (citations omitted).

[¶15] Because confinement need not be for a substantial period of time under Wyoming's kidnapping statute, it appears that a relatively brief period of confinement can constitute this crime. *See Vaught*, ¶ 25, 366 P.3d at 518. There must be some other language, however, to distinguish kidnapping from felonious restraint and false imprisonment. The latter two crimes are lesser intrusions on a victim's freedom of movement that carry lesser penalties. *See* Wyo. Stat. Ann. § 6-2-202; Wyo. Stat. Ann. § 6-2-203; *see Dean v. State*, 2003 WY 128, ¶ 30, 77 P.3d 692, 701 (Wyo. 2003) ("We hold that false imprisonment is a lesser-included offense of kidnapping, insofar as statutory elements are concerned."). We again turn to our opinion in *Doud*, which clears up the confusion.

[¶16] In *Doud*, the defendant claimed that the broad language of our kidnapping statute eradicated any distinction between kidnapping and felonious restraint or false imprisonment. This Court disagreed, reasoning as follows:

> Kidnapping requires confinement with the intent to hold for ransom, to facilitate the commission of a felony, or to inflict bodily injury on or to terrorize the victim or another. Felonious restraint involves an unlawful restraint which exposes the victim to a risk of serious bodily injury. Wyo. Stat. § 6-2-202 (1988). False imprisonment requires a knowing and unlawful interference with the victim's liberty. Wyo. Stat. § 6-2-203 (1988). Unlike felonious restraint or false imprisonment, kidnapping requires confinement with the intent to take one of three severe actions. By requiring not only confinement but also the additional intent to hold for ransom, to facilitate the commission of a felony, or to inflict bodily injury on or to terrorize the victim, the Legislature made kidnapping a much more serious crime which is easily distinguished from felonious restraint or false imprisonment.

*Doud*, 845 P.2d at 406.

[¶17] In this case, the evidence viewed in the light most favorable to the State shows the following. Appellant confined Ms. Yearsley in her home, forcing her to remain there in several locations—the bathroom, the bedroom, and eventually the living room. During

6

this entire time, he had his hands around her neck or her body, rendering her unable to seek the usual protections of society. Appellant ended the confinement only when he became aware that Ms. Yearsley had called the police. There is no evidence suggesting that the confinement would have ended had she not been able to contact law enforcement.

[¶18] A reasonable jury could have found from these facts that the time the victim was forced to spend in her house with Appellant was sufficient to constitute confinement within the meaning of § 6-2-201. Furthermore, the evidence establishes that his intent was to inflict bodily injury on or to terrorize Ms. Yearsley, because he did so by choking, body-slamming and punching her.[6]

[¶19] We understand that the breadth of Wyoming's kidnapping statute causes it to fall in the minority of jurisdictions in this country. *See* 3 Wayne R. LaFave, *Substantive Criminal Law* § 18.1 (2d ed. 2003) (citing *Vaught* in support of the statement that "[s]ome courts adhere to the minority position that the absence of any such qualifying words in the statute means that a kidnapping conviction may be had even though the confinement was very brief and closely connected to commission of the underlying offense"). However, this Court's role is not to make the law or change it. Our duty is to interpret and apply the law. The legislature could amend the kidnapping statute to conform to the philosophy of the Model Penal Code and the position a majority of states have taken, but it has not done so, and we must apply the statute as it is written. *See Vaught*, ¶ 31, 366 P.3d at 520-21 (observing that the law in this area may in the future undergo considerable development).

*Misdemeanor Theft*

[¶20] As already noted, on August 14, 2015, Appellant showed up at Ms. Yearsley's place of employment, a bar, while she was there but not on duty. Because their encounter became heated, the two eventually made their way to her apartment to get out of the public eye.

[¶21] While they were still together, Appellant gave Yearsley's seven-year-old daughter an Apple iPhone 6. Yearsley didn't think a child of that age should have a cell phone, and so she took the phone from her daughter and used it herself. While the two were at Yearsley's apartment on August 14, Appellant became irritated that she was using the phone he had given her daughter instead of paying attention to him, and he took the phone.

---

[6] The defense in this case did not seek lesser included offense instructions concerning felonious restraint or false imprisonment. The jury thus faced a simple choice of kidnapping or no offense at all on this count.

[¶22]   The next day, August 15, Ms. Yearsley activated her old iPhone 5 and began using it.  As already explained above, Appellant took this phone after she made the 911 call during the course of events that led to his conviction for kidnapping.

[¶23]   The misdemeanor theft count of the Information originally charged that Appellant committed misdemeanor theft by stealing the iPhone 6 on August 14, 2015.  The only jury instruction on the elements of this offense in the record reflects this charge.  However, after the close of evidence, the district court allowed the State to amend the theft charge in the Information to August 15, which caused it to relate to the iPhone 5.  After the court had instructed the jury and closing arguments had been given, it occurred to the judge that Instruction 17 it had read was incorrect in light of the amendment it had allowed, since the date in the elements instruction was August 14, when the iPhone 6 was taken.

[¶24]   The court then evidently issued a corrected jury instruction reflecting the amendment it had allowed for substitution in the packets given each juror as required by Wyoming Rule of Criminal Procedure 24.3.[7]   Appellant did not object to the modification, although his counsel had objected to the amendment earlier.  The original of the instructions, from which the court read to the jury (including the erroneous instruction), went to the jury room, because that document contained the original verdict form the jury was to and did use.  The jury thus had a different instruction in one copy of the instruction packet than they had in their individual packets.[8]

[¶25]   Appellant says that there was insufficient evidence to support the theft charge relating to the iPhone 6 taken on August 14, referring to the instruction in the record.  There was evidence that Appellant paid for that phone and the cell service to it.  Although the situation that developed in this case is most certainly one to be avoided,[9] the record does reflect that the Information was amended and that the jury received written

---

[7] That rule provides that the "trial court shall provide each juror with the juror's own copy of all written instructions that the court reads to the jury before, during or at the conclusion of the trial."

[8] We infer that the jurors' packets were destroyed along with their notes.

[9] There are a number of concerning aspects to what occurred.  First of all, no written amendment to the Information can be found in the record.  Although the amendment orally sought and orally allowed was simple enough in this case (a date change), this will not always be the case.  Secondly, the jury was first instructed incorrectly while each juror had a copy of the incorrect instruction to read as the judge read it.  Third, the amended instruction was evidently simply substituted in the individual juror packets, and the jury was not called back to the courtroom to be advised of this change and read this instruction, and it received no explanation of the change that we can find in the record.  Fourth, the packet of instructions containing the verdict form which was returned still contained the wrong instruction.  Although the State suggests that the judge may have left the packet sent back for return of the verdict unchanged to keep a record of the erroneous instruction, it would have been wiser to simply remove the offending instruction from that packet, make a note on it as to what happened and place it in the court file, and to then replace it with the corrected instruction.  Although such things happen in the heat of battle, the record could certainly be better.

8

instructions correcting the date of the offense to August 15, which was the date the iPhone 5 was taken, although there was a conflicting instruction in the packet containing the original verdict form. The State's closing argument is somewhat confusing, but it appears to be consistent with a claim that the phone taken on August 15 was wrongfully taken, while the phone taken on August 14 belonged or at least may have belonged to Dockter, or that it belonged to Ms. Yearsley's daughter instead of Ms. Yearsley.

[¶26] Appellant's argument is limited to a claim that the evidence was insufficient to prove a taking of the iPhone 6 on August 14. Since we conclude that the information was amended and an instruction consistent with that amendment was given, we find sufficient evidence to establish that Appellant took the iPhone 5 on August 15, and that there were therefore sufficient facts for a jury to reasonably conclude that each of the elements of misdemeanor theft relating to that phone was proven beyond a reasonable doubt.

[¶27] Affirmed.