*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2019 UT 37**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

PAUL PAXMAN,
*Appellee,*

*v.*

BRIAN S. KING,
*Appellant.*

No. 20170067
Filed July 26, 2019

On Appeal of Interlocutory Order

Third District, Salt Lake
The Honorable Elizabeth A. Hruby-Mills
No. 160903568

Attorneys:

Michael F. Skolnick, Salt Lake City, for appellant

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE,
and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 This is a legal malpractice case that is before us on
interlocutory appeal. The malpractice claim was asserted by plaintiff
Paul Paxman against his former attorney Brian King. King
represented Paxman, an optometrist, in a criminal case arising out of
Paxman's Medicaid billing for his services. On advice from King,
Paxman pled guilty to charges under the Fraudulent Insurance Act,
UTAH CODE § 76-6-521, and the False Claims Act, *id.* § 26-20-7. And
Paxman was then placed on a federal exclusion list, which prevented
him from participating in federal health care programs and billing a
number of insurance companies.

¶2　On successful completion of probation, Paxman's charges were reduced from third-degree felonies to Class A misdemeanors under Utah Code section 76-3-402. Shortly thereafter Paxman sued King for legal malpractice. He alleged that King failed to inform him of the consequences of pleading guilty or to advise him of the likelihood of success at trial.

¶3　King moved for summary judgment. He asked the district court to conclude that Paxman's claims failed as a matter of law under either of two distinct but related rules embraced in some other jurisdictions—the "exoneration rule" and the "actual innocence" requirement. The exoneration rule requires exoneration in a postconviction action as a precondition to a legal malpractice action arising out of a criminal proceeding. And the actual innocence requirement bars criminal defendants from maintaining a legal malpractice action unless they first prove their factual innocence. Both of these rules, in King's view, are "natural extension[s] of the elements required to establish legal malpractice under Utah law."

¶4　The district court declined to adopt either rule—though not necessarily because it believed they lacked merit. Instead the court noted "the absence of direction from Utah appellate courts" on the matter. And it "decline[d] to adopt" either rule given the lack of such direction.

¶5　King petitioned for leave to challenge this decision on interlocutory appeal. We granted that petition in light of the significant issues raised in King's motion. Paxman failed to appear—he filed no brief defending the district court's decision and made no attempt to participate in oral argument.

¶6　Around the time we heard King's appeal, another case came before us presenting the same issues—*Thomas v. Hillyard*, 2019 UT 29, --- P.3d ---. We received full briefing and heard argument in that case. And we decided that neither the exoneration rule nor the actual innocence requirement have a place in our malpractice law. *Id.* ¶¶ 13–14. We reinforce that decision here. In doing so, we address a few arguments presented by King not considered in *Thomas*.

¶7　This disposition should in no way be viewed as rewarding an appellee for his default on appeal. In an ordinary case we could reverse, even absent any argument from an appellee, upon a determination that the appellant had made a *prima facie* showing of a

plausible basis for reversal. *See Broderick v. Apartment Mgmt. Consultants, L.L.C.*, 2012 UT 17, ¶ 19, 279 P.3d 391. But we have an obligation to get the law right. And this case did not come before us in a vacuum. *Thomas v. Hillyard* squarely addresses the issues presented here. We rely on that decision to resolve this case, and as a basis for our decision to affirm the decision of the district court.

I

¶8   Prior to our decision in *Thomas v. Hillyard*, "we ha[d] never explicitly articulated the elements for legal malpractice . . . when the underlying case is criminal." 2019 UT 29, ¶ 13, --- P.3d ---. Nor had we ever opined on the propriety of the exoneration rule or the actual innocence requirement. *Thomas* addressed each of these issues. In *Thomas* we decided that the elements of a legal malpractice claim based on an underlying criminal case are identical to the elements of a legal malpractice claim based on an underlying civil case. *See id.* ¶ 14.[1] And we rejected the argument King presents here—that to prove causation in a legal malpractice action, a criminal defendant must be exonerated, establish actual innocence, or both.

¶9   As we put it in *Thomas*, "[s]uccess in a postconviction proceeding or evidence of actual innocence certainly may aid plaintiffs in proving causation or harm." *Id.* ¶ 14. "But neither will always be necessary." *Id.* "There may be scenarios in which a plaintiff would not be entitled to postconviction relief but could still demonstrate proximate cause in a legal malpractice action." *Id.*; *see also id.* ¶ 14 n.15 (providing an example of when a defendant could successfully demonstrate prejudice without first proving legal or factual innocence). For these reasons our *Thomas* opinion rejected the proposition that "additional burdens should be imposed on criminal defendants who assert malpractice"—those "burdens" being exoneration or proof of actual innocence. *Id.* ¶ 14.

---

[1] Those elements are proof of "(i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages." *Christensen & Jensen, P.C. v. Barrett & Daines*, 2008 UT 64, ¶ 22, 194 P.3d 931 (citation omitted).

¶10 The causation argument rejected in *Thomas* lies at the heart of King's appeal. Yet King also presents a few other arguments in favor of either the exoneration rule or the actual innocence requirement. He first cites concerns about inconsistent judgments and the need to promote judicial economy. He argues that if Paxman is allowed to pursue his legal malpractice claim, the question of his innocence will be relitigated and a resulting judgment may be inconsistent with his guilty plea. And he asserts that this would undermine the doctrine of collateral estoppel and waste judicial resources.

¶11 We decline to endorse the blanket rules that King advocates on the basis of these policy concerns. The inconsistent judgment concern assumes that a judgment against an attorney in a legal malpractice action equates to a determination that the client is innocent of the underlying crime. But that does not necessarily follow. A judgment in the legal malpractice action simply reflects the fact that a breach of the duty of care resulted in an injury to the attorney's client. It says nothing definitive about the client's guilt or innocence in the underlying criminal matter. Even if a client determines that postconviction relief is appropriate, moreover, or helpful in establishing causation, that will not necessarily open the door to inconsistent judgments. District courts retain the inherent power to stay civil malpractice suits until postconviction proceedings are completed, in a manner avoiding the risk of inconsistent judgments. *See Lewis v. Moultree*, 627 P.2d 94, 96 (Utah 1981).

¶12 King's judicial economy justification cuts both ways. A rule requiring plaintiffs to obtain postconviction relief will conserve judicial resources if the postconviction judgment establishes a collateral estoppel bar on proof of causation in a later malpractice action. *See Buckner v. Kennard*, 2004 UT 78, ¶¶ 13–14, 99 P.3d 842 (establishing the elements of collateral estoppel and discussing its value). But the failure of a postconviction claim may not always have preclusive effects in a legal malpractice action. And where the postconviction claim is unsuccessful the result will be to compound litigation. An exoneration rule will thus at least sometimes result in duplicative litigation—a postconviction claim followed by a legal malpractice action. And the exoneration rule could thus be rejected on judicial economy grounds.

¶13 King also contends that the exoneration rule and actual innocence requirements are needed to prevent criminals from profiting from their criminal conduct. But this rests on a faulty premise. Criminal defendants who prevail in a malpractice action do not profit from their criminal conduct. They are receiving compensation for an injury suffered at the hands of their attorney.

¶14 For all these reasons, we reaffirm what we said in *Thomas*— neither the exoneration rule nor the actual innocence requirement are elements of a criminal defendant's legal malpractice claim.[2] And we affirm the decision of the district court.

II

¶15 In affirming the decision of the district court we are by no means endorsing the strategy of non-appearance by an appellee. By failing to appear, an appellee subjects itself to a serious risk of reversal. Without any opposition to the appellant's arguments, the appellate court will be left with only one side of the case. And that may often lead to reversal.

¶16 Our decision should likewise not be taken as an endorsement of the district court's analytical path. The district court surveyed the legal landscape, noted the implications of adopting the exoneration rule and actual innocence requirement, and explicitly stated that it was "not unsympathetic to the public policy supporting the exoneration rule." But "in the absence of direction from Utah appellate courts," it declined to adopt either rule.

¶17 We discourage this type of decision making. We recognize that the district court was confronting difficult questions that implicate competing policy considerations. But trial judges possess the same common-law power that appellate courts do. *See* UTAH CONST. art. VIII, § 1. When faced with questions of first-impression, trial judges should address them head-on. They should not reserve judgment in a manner that leaves the issues for resolution on appeal in the first instance. Doing so not only deprives the parties of their

---

[2] This does not mean that a criminal defendant's inability to prove innocence could not come into play in the course of a legal malpractice case. King is free to argue this point in challenging Paxman's ability to prove causation as an element of his claim. And in a case like this one it may be difficult for a client who cannot prove his innocence to establish causation.

right to a disposition in accordance with law in the trial court; it also deprives the appellate court of the benefit of the lower court's analysis of the matter.[3]

---------

[3] We may not defer to our lower courts' decisions on pure questions of law. *See Cope v. Utah Valley State Coll.*, 2014 UT 53, ¶ 10, 342 P.3d 243. But that does not mean that we ignore them. We often find them insightful and informative. *See State v. Ogden*, 2018 UT 8, ¶ 49 n.14, 416 P.3d 1132 ("[A] district court robs this court, and our judicial system, of valuable insight when it shrinks from its constitutional responsibility to answer the questions put before it. District courts see far more cases with many more variations than our appellate courts. This provides them with unique insights into the questions presented."). And even when we disagree with them we find them useful in our analysis. A lower court decision is the first, core step in our justice system—and it is an essential element of even a case that is destined for resolution on appeal. No trial judge should decline to resolve a question of law—even a matter of first-impression that seems certain to be presented for resolution on appeal—just because there is as yet no controlling authority on the matter. *See Vega v. Jordan Valley Med. Ctr.*, 2019 UT 35, ¶ 8 n.5, --- P.3d --- ("While this court has the final say . . . the judicial function of the lower courts is not optional; it is the duty of the courts to reason through each case and issue decisions based on sound and thorough legal analysis . . . .").