# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 119

APRIL TERM, A.D. 2020

September 11, 2020

| | | |
|---|---|---|
| CHAD DOCKTER, | | |
| Appellant (Plaintiff), | | |
| v. | | S-20-0028 |
| DIANE LOZANO, as an individual and in her official capacity; ERIC ALDEN, as an individual and in his official capacity; DONALD MILLER, as an individual and in his official capacity; ROBIN COOPER, as an individual and in her official capacity; and the OFFICE OF THE STATE PUBLIC DEFENDER, | | |
| Appellees (Defendants). | | |

*Appeal from the District Court of Laramie County*
*The Honorable Catherine R. Rogers, Judge*

*Representing Appellant:*

    *Chad Dockter, pro se.*

*Representing Appellees:*

    *Bridget L. Hill, Attorney General; Ewa C. Dawson, Senior Assistant Attorney General; Maddisen L. Gorman, Assistant Attorney General.*

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Justice.**

[¶1]     Chad Dockter filed a legal malpractice suit against the Office of the State Public Defender, the State Public Defender, and the individual public defenders who represented him in his criminal case.  The district court found none of the exceptions to governmental immunity in the Wyoming Governmental Claims Act (WGCA) applied and the exoneration rule made his claim premature, and it dismissed Mr. Dockter's complaint with prejudice.  Mr. Dockter appeals, and we reverse and remand.

### ISSUES

[¶2]     We address the following issues:

> 1. Does Mr. Dockter's malpractice claim fall within the WGCA contract exception?
>
> 2. Did the district court properly dismiss Mr. Dockter's malpractice suit when his complaint alleged the Public Defenders had insurance coverage?
>
> 3. Is Mr. Dockter's malpractice action barred by the exoneration rule?

### FACTS

[¶3]  In 2016, public defenders Donald Miller and Robin Cooper represented Mr. Dockter in his criminal trial.  The jury convicted Mr. Dockter of kidnapping, unlawful entry, misdemeanor theft, property destruction, interference with an emergency call, and domestic battery.  *Dockter v. State*, 2017 WY 63, ¶ 8, 396 P.3d 405, 407 (Wyo. 2017) (*Dockter I*).  Mr. Dockter appealed his kidnapping and misdemeanor theft convictions and Eric Alden, an attorney with the appellate division of the Wyoming Office of the State Public Defender, represented him.  Before this Court issued its decision on the appeal, Mr. Dockter filed pro se motions for a new trial pursuant to Wyoming Rule of Criminal Procedure 33.  *Dockter v. State*, 2019 WY 31, ¶ 5, 436 P.3d 890, 892-93 (Wyo. 2019) (*Dockter II*).  The district court appointed the Public Defender's Office to represent Mr. Dockter on his Rule 33 motions and scheduled a hearing for June 16, 2017.  *Id.* at ¶ 7, 436 P.3d at 893.  On June 1, 2017, this Court affirmed Mr. Dockter's convictions.  *Dockter I*, 2017 WY 63, 396 P.3d 405.  The Rule 33 hearing proceeded as scheduled, but the State Public Defender, Diane Lozano, appeared instead of Mr. Alden.  She objected to any public defender representing Mr. Dockter on his Rule 33 motions because the Public Defender's Office was not statutorily required to represent him once his appeal had been decided.  *Dockter II*, 2019 WY 31, ¶ 7, 436 P.3d

1

at 893. The district court agreed. *Id.* Mr. Dockter appealed that decision to this Court in *Dockter II*, and we affirmed. *Id*. at ¶ 12, 436 P.3d at 894.

[¶4]    Mr. Dockter filed his notice of governmental claims pursuant to the WGCA and then sued Ms. Cooper and Mr. Miller for negligence and/or malpractice and Mr. Alden for malpractice, negligence, and abandonment. He sued Ms. Lozano for abandonment; failure to properly supervise and train Mr. Miller, Ms. Cooper, and Mr. Alden; negligence; and malpractice. Mr. Dockter amended his complaint to add the Office of the State Public Defender as a party, and to add causes of action for conspiracy to abandon between Mr. Alden and Ms. Lozano, and breach of contract. We refer to the Appellees collectively as the Public Defenders.

[¶5]    The Public Defenders filed a motion to dismiss under Wyoming Rule of Civil Procedure 12(b)(6), arguing Mr. Dockter's claims did not fall under any of the WGCA exceptions to sovereign immunity. In the alternative, they argued that Wyoming should adopt the exoneration rule, which requires a criminal defendant to receive post-conviction relief prior to bringing a malpractice suit against his former defense attorneys. The district court concluded that none of the exceptions to immunity in the WGCA applied to Mr. Dockter's claims and they were therefore barred by sovereign immunity, and it held that the exoneration rule rendered Mr. Dockter's lawsuit premature, and dismissed his case with prejudice. Mr. Dockter appealed.

## STANDARD OF REVIEW

[¶6]    We review orders granting a motion to dismiss under Rule 12(b)(6) de novo. *Craft v. State ex rel. Wyo. Dep't of Health*, 2020 WY 70, ¶ 9, 465 P.3d 395, 399 (Wyo. 2020). "[W]e employ the same standards and examine the same materials as the district court: we accept the facts alleged in the complaint . . . as true and view them in the light most favorable to the non-moving party." *Id*. (quoting *Moose Hollow Holdings, LLC v. Teton Cty. Bd. of Cty. Comm'rs*, 2017 WY 74, ¶ 20, 396 P.3d 1027, 1033 (Wyo. 2017)). Dismissal is appropriate where it is certain from the face of the complaint that the plaintiff cannot assert any fact that would entitle him to relief. *Craft*, 2020 WY 70, ¶ 9, 465 P.3d at 399 (citing *Dowlin v. Dowlin*, 2007 WY 114, ¶ 6, 162 P.3d 1202, 1204 (Wyo. 2007); W.R.C.P. 12(b)(6)).

## DISCUSSION

### I.    Mr. Dockter's malpractice claim does not fall within the Wyoming Governmental Claims Act's contract exception

[¶7]    The legislature enacted the WGCA to address the inherent unfairness that results from the strict application of governmental immunity. *Archer v. State ex rel. Wyo. Dep't*

*of Transp.*, 2018 WY 28, ¶ 7, 413 P.3d 142, 145-46 (Wyo. 2018). The WGCA seeks to balance the "equities between persons injured by governmental actions and the taxpayers of the state of Wyoming whose revenues are utilized by governmental entities on behalf of those taxpayers." Wyo. Stat. Ann. § 1-39-102(a) (LexisNexis 2019).

[¶8] Mr. Dockter's complaint alleges causes of action against the Public Defenders for negligence, malpractice, failure to supervise, conspiracy to abandon, and abandonment. The Public Defenders are public employees who are immune from suit unless they were acting outside the course and scope of their employment[1] or Mr. Dockter's claims fall under one of the statutory exceptions. *Veile v. Bd. of Cty. Comm'rs of Washakie Cty.*, 860 P.2d 1174, 1177 (Wyo. 1993). Mr. Dockter argues that legal malpractice lies in contract and the WGCA waives immunity for suits based in contract. Wyo. Stat. Ann. § 1-39-104(a). His malpractice claim, however, sounds in tort and therefore does not fall under the WGCA contract exception.

[¶9] In *Moore v. Lubnau*, this Court applied the medical malpractice framework to legal malpractice. 855 P.2d 1245, 1248 (Wyo. 1993) ("We conclude that the test applicable in our medical malpractice cases should also apply in the analogous situation of a legal malpractice claim."). Thus, the elements of a legal malpractice claim are: "1) the existence of a duty; 2) the accepted standard of legal care; 3) that the attorney departed from the accepted standard of care; and 4) that the attorney's conduct was the legal cause of the injuries suffered." *Gayhart v. Goody*, 2004 WY 112, ¶ 16, 98 P.3d 164, 169 (Wyo. 2004) (citing *Moore*, 855 P.2d at 1248).

[¶10] Our legal malpractice precedent is somewhat "in conflict" over whether the action sounds in tort or contract. *Long-Russell v. Hampe*, 2002 WY 16, ¶ 4, 39 P.3d 1015, 1016 (Wyo. 2002). While the standard of care for legal malpractice sounds in tort, the duty element is often based on a contractual agreement between the parties. *Horn v. Wooster*, 2007 WY 120, ¶ 10, 165 P.3d 69, 72 (Wyo. 2007). As a result, our precedent at times treats legal malpractice as sounding in contract, and at others as sounding in tort. In *Jackson State Bank v. King*, 844 P.2d 1093, 1095-96 (Wyo. 1993), we held the Wyoming Comparative Negligence Statute did not apply to the malpractice action explaining, "[t]he relationship of attorney and client is contractual in nature." In *Kolschefsky v. Harris*, 2003 WY 86, ¶ 9, 72 P.3d 1144, 1146 (Wyo. 2003), we used the "hybrid" approach, explaining that "the standard of care sounds in tort" even though the attorney/client

---

[1] Mr. Dockter alleges that Mr. Alden and Ms. Lozano acted outside the scope of their duties by conspiring to abandon and abandoning him at his Rule 33 hearing. However, "abandonment" is not a recognized cause of action and, therefore, neither is "conspiracy to abandon." To the extent Mr. Dockter complains that the Public Defenders failed to represent him at his Rule 33 hearing, we will consider it as part of his legal malpractice claim.

relationship is contractual. Since *Moore*, 855 P.2d at 1248, we have applied a tort framework for legal malpractice. *Meyer v. Mulligan*, 889 P.2d 509 (Wyo. 1995); *Bevan v. Fix*, 2002 WY 43, ¶ 40, 42 P.3d 1013, 1026 (Wyo. 2002); *Rino v. Mead*, 2002 WY 144, ¶¶ 15-20, 55 P.3d 13, 18-20 (Wyo. 2002); *Rivers v. Moore, Myers & Garland*, 2010 WY 102, ¶ 13, 236 P.3d 284, 291 (Wyo. 2010).

[¶11]  These cases can be reconciled by examining the elements of legal malpractice. In most cases, a contractual relationship between the attorney and client forms the duty necessary for the first element of legal malpractice. *Kolschefsky*, 2003 WY 86, ¶ 9, 72 P.3d at 1146; *Horn*, 2007 WY 120, ¶ 10, 165 P.3d at 72-73. The exception is *Jackson State Bank v. King*, which we overrule to the extent that it holds legal malpractice always sounds in contract law. 844 P.2d 1093. This approach is supported by a review of secondary sources. 7A C.J.S. *Attorney & Client* § 385 (June 2020 Update); 1A C.J.S. *Actions* § 129 (June 2020 Update); *see also* Restatement (Third) of the Law Governing Lawyers § 48 (2000). Legal malpractice actions are torts whose first element, duty, is often satisfied by establishing a contractual relationship.[2]

[¶12]  We hold that legal malpractice is a tort when the claim is for the breach of a duty imposed by the existence of an attorney/client relationship. Mr. Dockter's malpractice suit against the Public Defenders alleges a general breach of the duty owed by an attorney to a client. He does not allege that the Public Defenders violated a specific contract term unrelated to the attorney-client relationship.[3] Therefore, Mr. Dockter's legal malpractice suit lies in tort. His attempt to categorize it as a breach of contract subject to the WGCA's waiver of sovereign immunity for contract claims fails.

## II.   *The district court improperly dismissed Mr. Dockter's malpractice action because his complaint alleged the Public Defenders had insurance coverage*

[¶13]  In his amended complaint, Mr. Dockter alleged the Public Defenders "waived immunity under the 'insurance coverage exception' pursuant to Wyo. Stat. Ann. § 1-39-118(b)(i)." The Public Defenders responded in their motion to dismiss by stating that "Dockter . . . presents no evidence that the Wyoming Public Defender's Office has purchased insurance that either raises the damages cap under the [WGCA] or covers

---

[2] We need not address the Public Defenders' contention that the relationship between public defenders and their clients is not contractual.

[3] We do not go so far as to say that legal malpractice is always a tort. A legal malpractice claim could sound in contract if the plaintiff alleges a breach of a specific term within the contract for employment. 7A C.J.S. *Attorney & Client* § 385 ("[I]t has been held that where the act complained of in a legal malpractice action is a breach of the specific terms of a contract without reference to the legal duties imposed by law on the attorney-client relationship, the action is contractual in nature, but where the essential claim of the action is a breach of a duty imposed by law on the attorney-client relationship and not of the contract itself, the action lies in tort.").

4

liability not authorized by the Act." In their reply brief, the Public Defenders explained they had provided a response to Mr. Dockter's request to show cause that demonstrated they were covered solely by the State's self-insurance program and, thus, Mr. Dockter's argument the WGCA insurance exception applied was "moot." On appeal, the Public Defenders assert they presented evidence that they did not have insurance that would extend coverage in response to Mr. Dockter's request to show cause. Mr. Dockter correctly points out that such evidence was not properly before the district court on a W.R.C.P. 12(b)(6) motion.

[¶14] Our standard of review requires us to "accept the facts alleged in the complaint . . . as true and view them in the light most favorable to the non-moving party." *Craft*, 2020 WY 70, ¶ 9, 465 P.3d at 399 (quoting *Moose Hollow Holdings, LLC*, 2017 WY 74, ¶ 20, 396 P.3d at 1033). Dismissal is inappropriate if, on the face of the complaint, the plaintiff asserts any fact that would entitle him to relief. *Craft*, 2020 WY 70, ¶ 9, 465 P.3d at 399 (citing *Dowlin*, 2007 WY 114, ¶ 6, 162 P.3d at 1204; W.R.C.P. 12(b)(6)). In *Cranston v. Weston Cty. Weed & Pest Bd.*, the district court accepted evidence about insurance coverage in the form of a letter from the insurer, and then dismissed the complaint. 826 P.2d 251, 253-54 (Wyo. 1992). We reversed and held:

> in considering the motion to dismiss, the trial court should have made its findings based solely on the allegations of the amended complaint. The only question about insurance coverage at the dismissal stage was whether the Cranstons pled it and thereby avoided Rule 12(b) dismissal on the basis of sovereign immunity. If the complaint pled applicable insurance coverage, it should not have been dismissed on its face. The record shows that the amended complaint did plead applicable liability insurance. . . . Since dismissal is inappropriate, we reverse.

*Id.* at 259. Conversely, in *Archer*, we found that dismissal was appropriate because "our standard of review requires us to accept the facts stated in the amended complaint as true, and there are no allegations regarding insurance coverage." 2018 WY 28, ¶ 13, 413 P.3d at 148.

[¶15] Here, as in *Cranston* and unlike *Archer*, Mr. Dockter specifically alleged that the insurance coverage exception applied. And, like in *Cranston*, the Public Defenders contend information beyond the face of the amended complaint establishes the absence of liability insurance. However, such information cannot be considered by the district court on a motion to dismiss, where the only question is whether Mr. Dockter pled the insurance coverage exception. He did. Thus, dismissal under W.R.C.P. 12(b)(6) was improper.

### III.    *The exoneration rule does not bar Mr. Dockter's suit*

[¶16] We turn next to the exoneration rule to determine if it applies to bar this malpractice suit.    The district court held that the exoneration rule applied to Mr. Dockter's malpractice suit and was "equally dispositive."    This Court has never before considered whether to adopt the exoneration rule, and we decline to do so now.

[¶17] The exoneration rule "provides that a criminal defense attorney may not be sued for legal malpractice in a case resulting in the conviction of his or her client unless the client has been exonerated by direct appeal or upon post-conviction relief." *Lawrence v. Bingham, Greenebaum, Doll, L.L.P.*, 567 S.W.3d 133, 135 (Ky. 2018).    Numerous jurisdictions have adopted some variation of the exoneration rule.[4]   Several courts require both exoneration as a precondition to a legal malpractice action and that the former criminal defendant prove actual innocence in the malpractice suit. *Ang v. Martin*, 114 P.3d 637 (Wash. 2005); *Schreiber v. Rowe*, 814 So.2d 396 (Fla. 2002); *Coscia v. McKenna & Cuneo*, 25 P.3d 670 (Cal. 2001); *Britt v. Legal Aid Soc., Inc.*, 741 N.E.2d 109 (N.Y. 2000); *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 497-98 (Tex. 1995); *Morgano v. Smith*, 879 P.2d 735, 737-38 (Nev. 1994); *Bailey v. Tucker*, 621 A.2d 108, 113 (Penn. 1993); *Shaw v. State, Dep't of Admin.*, 861 P.2d 566 (Alaska 1993) (guilt of the plaintiff is an affirmative defense); *Paulsen v. Cochran*, 826 N.E.2d 526 (Ill. App. Ct. 2005).    Other courts require persons seeking to sue their former criminal defense attorney to first obtain exoneration through appeal or post-conviction relief. *E.g.*, *Molen v. Christian*, 388 P.3d 591, 596 (Idaho 2017); *Lawrence*, 567 S.W.3d at 140.    This approach permits malpractice suits following exoneration for any error without requiring proof of actual innocence. *Id.*   Exoneration rule jurisdictions generally reason that a guilty person cannot prove proximate cause in a malpractice case because his or her criminal conduct is always the proximate cause of the harm—even if the attorney committed malpractice. *E.g.*, *Schreiber*, 814 So.2d 396; *Ang*, 114 P.3d 637.    They rely on similar policy justifications:

> equitable principles against shifting responsibility for the consequences of the criminal's action; the paradoxical difficulties of awarding damages to a guilty person; theoretical and practical difficulties of proving causation; the potential undermining of the postconviction process if a legal

---

[4] Some courts require proof of actual innocence at trial but allow malpractice cases to proceed without exoneration. *Rodriguez v. Nielsen*, 609 N.W.2d 368 (Neb. 2000); *Gaylor v. Jeffco*, 999 A.2d 290 (N.H. 2010) (citing *Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A.*, 727 A.2d 996 (N.H. 1999)).    This innocence variation is not at issue because the question before us is whether Mr. Dockter may state a claim for malpractice without exoneration.

6

malpractice action overrules the judgments entered in the postconviction proceedings; preserving judicial economy by avoiding relitigation of settled matters; creation of a bright line rule determining when the statute of limitations runs on the malpractice action; availability of alternative postconviction remedies; and the chilling effect on thorough defense lawyering.

*Canaan v. Bartee*, 72 P.3d 911, 916 (Kan. 2003).

[¶18] We are not persuaded by these policy justifications and, further, find the procedures Wyoming courts have in place are more than adequate to protect the interests cited by exoneration-rule courts. We therefore join the minority of jurisdictions in rejecting the exoneration rule. *Paxman v. King*, 448 P.3d 1199 (Utah 2019); *Thomas v. Hillyard*, 445 P.3d 521 (Utah 2019); *Rantz v. Kaufman*, 109 P.3d 132 (Colo. 2005); *Gebhardt v. O'Rourke*, 510 N.W.2d 900 (Mich. 1994); *Krahn v. Kinney*, 538 N.E.2d 1058 (Ohio 1989); *Mylar v. Wilkinson*, 435 So.2d 1237 (Ala. 1983); *Jepson v. Stubbs*, 555 S.W.2d 307 (Mo. 1977); *Duncan v. Campbell*, 936 P.2d 863 (N.M. Ct. App. 1997); *Silvers v. Brodeur*, 682 N.E.2d 811 (Ind. Ct. App. 1997).

[¶19] First, like the *Paxman* court, we conclude that the concern over awarding damages to a guilty person "rests on a faulty premise." *Paxman*, 448 P.3d at 1202. "Criminal defendants who prevail in a malpractice action do not profit from their criminal conduct. They are receiving compensation for an injury suffered at the hands of their attorney." *Id.* We have recognized that, "in Wyoming a convicted felon is not prohibited from instituting a civil action. Instead, the only civil rights denied upon conviction are those set forth by statute." *Ballinger v. Thompson*, 2005 WY 101, ¶ 19, 118 P.3d 429, 436 (Wyo. 2005). Like every malpractice plaintiff, a criminal defendant/malpractice plaintiff will have the heavy burden of demonstrating that the negligence of his attorney was the proximate cause of his injury. "A criminal defendant who prevails in a malpractice action is receiving compensation for an injury suffered, in the form of time spent in prison or the burden of a criminal record, not a windfall." *Rantz*, 109 P.3d at 138.

[¶20] This Court has long held that proximate cause is a question of fact to be decided by the factfinder unless reasonable minds could not differ. *Wood v. CRST Expedited, Inc.*, 2018 WY 62, ¶ 9, 419 P.3d 503, 506 (Wyo. 2018); *Collings v. Lords*, 2009 WY 135, ¶ 7, 218 P.3d 654, 657 (Wyo. 2009). Courts in Wyoming are well-equipped to evaluate the presence or absence of proximate cause in malpractice cases—as evidenced by our robust case law. *Rivers*, 2010 WY 102, ¶¶ 12-24, 236 P.3d at 290-93; *Meyer*, 889 P.2d at 516; *Mize v. North Big Horn Hosp. Dist.*, 931 P.2d 229, 233-34 (Wyo. 1997). Like the Supreme Courts of Ohio, Colorado, and Utah, we recognize the difficulty of proving proximate cause without exoneration but, nevertheless, decline to replace the case-by-

case proximate cause analysis with a general rule of thumb. *Krahn*, 538 N.E.2d at 1062; *Rantz*, 109 P.3d at 136; *Thomas*, 445 P.3d at 525. The Colorado Supreme Court

> reject[ed] the concept that, as a matter of law, a criminal defendant cannot establish the causation element of a malpractice claim unless he or she has been exonerated through postconviction relief. . . . It may be that in some or even the majority of legal malpractice suits against criminal defense attorneys, their former clients will not be able to prove that the outcome of the criminal case would have been successful unless they prevail in some manner in appellate or postconviction proceedings. Causation should be evaluated on the facts of a particular case, and we discern no reason for erecting a permanent barrier to malpractice claims with a blanket rule.

*Rantz*, 109 P.3d at 136. We will not create a bright-line rule where a case-by-case analysis will adequately dispose of unmeritorious claims, while allowing meritorious claims to proceed.

[¶21] Not all malpractice claims against criminal defense counsel require exoneration or actual innocence to establish injury. In *Krahn*, the prosecutor offered to drop Ms. Krahn's charges in exchange for her cooperation and testimony against another defendant. 538 N.E.2d at 1059. Ms. Krahn's attorney did not present her with the offer because he also represented the defendant against whom the prosecutor wanted Ms. Krahn to testify. *Id*. Ms. Krahn later pled guilty under much less favorable terms. *Id*. at 1059-60. Under the exoneration rule, she could not bring a malpractice suit against her criminal defense attorney because she submitted a valid guilty plea and was not exonerated. As the Ohio Supreme Court noted, "the injury in such a situation 'is not a bungled opportunity for vindication, but a lost opportunity to minimize her criminal record.'" *Id.* at 1061.

[¶22] In *Silvers*, Mr. Silvers was charged with one count of murder and two counts of attempted murder. 682 N.E.2d at 813. Brodeur, a criminal defense attorney, aggressively solicited Mr. Silvers' business. Mr. Silvers fired his original attorney shortly before trial and hired Brodeur. Brodeur filed a motion for a continuance which the court denied. He then advised Mr. Silvers to plead guilty to avoid a possible 120-year sentence and because he did not have time to prepare for trial. *Id*. Mr. Silvers later filed for post-conviction relief and argued that his plea was not knowing and intelligent. The court granted relief and he was retried and found guilty of criminal recklessness, a lesser included offense, and released from prison because he had already served the maximum

sentence for that crime. *Id*. Under the most common version of the exoneration rule, he would not be entitled to relief because he could not prove actual innocence.

[¶23] In *Jepson*, Mr. Jepson was drafted during the Vietnam war. 555 S.W.2d at 309. He filed for conscientious objector status and was denied. *Id*. He then refused to report for induction and hired an attorney because he assumed he would be charged with a crime. His attorney advised him there was no defense and he pled guilty and was sentenced to three years in prison. *Id*. After completing his sentence, Mr. Jepson consulted with a new attorney about options to restore his civil rights. *Id*. The attorney realized there was an error in the order of induction and filed a petition for writ of coram nobis, and the court overturned his conviction. Rather than appeal, the government dismissed the original charge against Mr. Jepson. *Id*. Despite his first attorney's erroneous advice, he would be barred from bringing a malpractice action under the actual innocence rule because he committed the underlying crime.

[¶24] Application of the exoneration rule would run counter to Wyoming statute of limitations jurisprudence. Wyoming is a discovery rule jurisdiction which means the "limitations clock begins to run 'when a reasonable person should have been placed on notice of his claim.' This rule applies to the two-year professional malpractice statute of limitations." *Foltz v. Oblasser*, 2020 WY 51, ¶ 16, 461 P.3d 417, 420 (Wyo. 2020) (citations omitted) (quoting *Pioneer Homestead Apts. III v. Sargent Eng'rs Inc.*, 2018 WY 80, ¶ 17, 421 P.3d 1074, 1079 (Wyo. 2018)). We have repeatedly rejected arguments that the statute of limitations does not begin to run until the damages have been fully incurred.

> As it relates to the damage element of the cause of action, the limitation period begins when the injured party knows or reasonably ought to know that some damage has resulted from the wrongful act. *Ogle v. Caterpillar Tractor Co.*, 716 P.2d 334, 337 (Wyo. 1986).

> As a general rule, where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not required that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. The act itself is regarded as the ground of the action, and is not legally severable from its consequences.

9

*Lucky Gate Ranch, L.L.C. v. Baker & Assocs., Inc.*, 2009 WY 69, ¶ 20, 208 P.3d 57, 65 (Wyo. 2009) (quoting *Duke v. Housen*, 589 P.2d 334, 343 (Wyo. 1979)). Adoption of the exoneration rule would require tolling the statute of limitations until the criminal defendant receives post-conviction relief. Even when diligently pursued, post-conviction relief takes years. *See, e.g.*, *Hannon v. Maschner*, 981 F.2d 1142 (10th Cir. 1992) (granting petition for writ of habeas corpus based on ineffective assistance of counsel thirty-three years after conviction); *Eaton v. Wilson*, 2014 WL 6622512 (granting conditional writ of habeas corpus based on ineffective assistance of counsel ten years after conviction); *Keats v. State*, 2005 WY 81, 115 P.3d 1110 (Wyo. 2005) (granting petition for post-conviction relief based on ineffective assistance of appellate counsel four years after conviction). Thus, the exoneration rule could require criminal defense attorneys to defend against decades-old claims, which is exactly what the statute of limitations aims to prevent. *Nuhome Investments, LLC v. Weller*, 2003 WY 171, ¶ 11, 81 P.3d 940, 945 (Wyo. 2003). We decline to create an exception to our discovery rule to adopt an exoneration prerequisite to bringing a legal malpractice claim against a criminal defense attorney, particularly when the professional malpractice statute of limitations makes no distinction between legal malpractice suits arising out of civil and criminal cases. Wyo. Stat. Ann. § 1-3-107 (LexisNexis 2019).

[¶25] We recognize that success or failure in post-conviction relief may have a preclusive effect on a malpractice suit. Denial of such relief may be a bar to a malpractice action, but that is a matter to be determined on a case-by-case basis. Wyoming courts determine whether collateral estoppel bars relitigation of issues by examining:

> (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Rathbun v. State*, 2011 WY 116, ¶ 9, 257 P.3d 29, 33 (Wyo. 2011).

[¶26] Success in post-conviction relief could certainly strengthen a malpractice plaintiff's case, which prompts the Public Defenders to raise concerns about parallel litigation. Once again, we have procedures in place to address those concerns. "The district court's decision to stay or dismiss an action due to a pending proceeding . . . is discretionary." *Southwestern Pub. Serv. Co. v. Thunder Basin Coal Co.*, 978 P.2d 1138,

1141 (Wyo. 1999). Thus, the district courts can determine whether to stay a malpractice proceeding while a post-conviction relief action is pending, limiting parallel litigation. *See Paxman*, 448 P.3d at 1201 ("District courts retain the inherent power to stay civil malpractice suits until postconviction proceedings are completed."); *Rantz*, 109 P.3d at 136.

[¶27] The Public Defenders briefly assert a number of other arguments for adopting the exoneration rule, including: (1) judicial economy; (2) preventing the potential for inconsistent judgments; (3) the "litigious nature of incarcerated persons"; (4) the risk of a defense attorney divulging damaging privileged material in a malpractice case; (5) and allowing the criminal defendant to pursue post-conviction relief without being distracted by a malpractice suit.

[¶28] The ability of district courts to stay proceedings, combined with the doctrine of collateral estoppel, adequately address the concern about judicial economy. Judicial economy alone is not a sufficient basis to subjugate a person's right to seek recourse from the courts. *Marshall v. Wimes*, 626 N.W.2d 229, 238 (Neb. 2001). The assertion that the exoneration rule will prevent inconsistent judgments incorrectly assumes that a judgment against a criminal defense attorney equates to a determination that the criminal defendant is entitled to post-conviction relief. *Paxman*, 448 P.3d at 1201. A malpractice judgment "simply reflects the fact that a breach of the duty of care resulted in an injury to the attorney's client." *Id.* Further, a malpractice action requires the plaintiff to prove his case by a preponderance of the evidence, whereas post-conviction relief requires a higher standard of proof. *Compare Scranton v. Woodhouse*, 2020 WY 63, ¶ 29 n.2, 463 P.3d 785, 792 n.2 (Wyo. 2020) (preponderance of the evidence); *with* Wyo. Stat. Ann. § 7-12-404(p) (LexisNexis 2019) (clear and convincing evidence). Thus, success in a post-conviction action may help prove the less burdensome malpractice case, but success in the malpractice case does not determine the post-conviction motion. Next, the Public Defenders urge us to adopt the exoneration rule because of the litigious nature of incarcerated people. We agree with the *Duncan* court that "generalizations about certain litigants ought [not] to create insuperable barriers to the filing and litigation of meritorious claims." 936 P.2d at 867.

[¶29] Finally, the Public Defenders' concerns about privileged information and the distraction of a malpractice suit while petitioning for post-conviction relief ring hollow. "[T]he decision whether to waive the attorney-client privilege belongs solely to the client." *Teniente v. State*, 2007 WY 165, ¶ 47, 169 P.3d 512, 528 (Wyo. 2007). Further, the client waives the privilege by suing the attorney, "to the extent that it is relevant to the controversy." *Wardell v. McMillan*, 844 P.2d 1052, 1066 (Wyo. 1992) (discussing doctor-patient privilege).

11

## *CONCLUSION*

[¶30]  The district court correctly concluded that the WGCA contract exception does not apply to Mr. Dockter's malpractice claim; however, the issue of the Public Defenders' insurance coverage was not properly disposed of on a motion to dismiss.  We hold that exoneration is not a prerequisite for a malpractice action.  We reverse the district court's order dismissing Mr. Dockter's amended complaint, and remand for further proceedings.